**State of Vermont v. Gregory R. Ballou**

[535 A.2d 1280]

No. 85-021

Present: **Allen, C.J., Dooley, J., and Barney, C.J. (Ret.), Keyser, J. (Ret.), and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed September 11, 1987

---

*Jeffrey L. Amestoy*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Stephen Norten*, Law Clerk (On the Brief), Montpelier; *William D. Wright*, Bennington County Deputy State's Attorney, Bennington; and *J. Paul Potash*, Historical Consultant (On the Brief), Burlington, for Plaintiff-Appellant.

*David W. Curtis*, Defender General, *David Carpenter*, Appellate Defender, and *Gregory Wirth*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellee.

**Dooley, J.** Based on evidence obtained by two separate searches of his person, each pursuant to authority of a warrant, defendant was charged with two counts of possession of a regulated drug with intent to sell, in violation of 18 V.S.A. § 4224(f)(1)(A). Defendant moved to suppress the evidence by pretrial motion, contending that the warrants were not founded on probable cause. The trial court concluded that the affidavit supporting the first warrant lacked sufficient evidence of criminal activity particularized with respect to the defendant, and granted the motion with respect to the first search. The court also suppressed the fruits of the second search on the same grounds. By interlocutory appeal, the State claims error in those decisions. We reverse.

## I. THE FACTS

This case turns entirely on the affidavits submitted to the judicial officer in support of the application for the warrants. The affidavit supplied for the first warrant is the most important. It was prepared by a state police officer and details the facts gathered in an eight month investigation of drug trafficking at a tavern (the Tavern) in Bennington County, in which defendant was the bouncer.

The major facts and allegations set forth in the six and one-half page supporting affidavit are as follows.

The affidavit describes fifteen separate events involving the Tavern and covers a period from November, 1983 through July 15, 1984—three days before the warrant was issued. In addition, the affidavit describes investigatory findings to corroborate details

supplied by informants and to identify the owner, employees and patrons of the Tavern.

Of the fifteen events, nine were related to the affiant by four confidential informants. The first described himself as a patron of the Tavern. In January, 1984, he stated that he purchased cocaine from the bartender whom he identified by name and by description. He further stated that he observed other people purchasing cocaine in the Tavern and that the transactions took place in the rear of the building by the "fooze ball machine." He stated that some of the drug sales were made by the bouncer whom he identified from a photographic lineup as the defendant in this case.

At the end of January, this informant again reported that he observed a recent drug transaction at the Tavern, involving the bartender.

The second confidential informant reported in March, 1984 that while present in the Tavern he observed the owner sell "speed" to another person. He also reported the names of the owner and employees of the Tavern.

The third confidential informant spoke with another police officer in June. She reported that she had observed the bartender at the Tavern sell cocaine to her boyfriend. She reported that it was known that drugs of all types were available at the Tavern and stated the prices of various kinds of drugs. Further, she reported that to buy drugs in the Tavern, one normally spoke with the bartender.

This informant made another report on July 5th. She described buying LSD at the Tavern and stated that the transaction took place in the rear of the bar.

The fourth informant provided the most information. On July 8th, this informant reported that he had purchased drugs in the Tavern in the past, with the most recent transaction occurring about two weeks earlier. He described how drugs were sold and indicated he normally dealt with the bartender. He also advised that cocaine was also sold by a regular customer whom he described.

The fourth informant reported that he and a friend tried to buy cocaine on the night of July 14th at the Tavern. No cocaine was available at that location. However, the defendant took them to his apartment and sold them a quarter ounce of cocaine.

On July 15th, the fourth informant made a controlled drug purchase at the Tavern. He was strip searched before entering the

Tavern and after leaving it. He took in $25 in marked bills and returned with $5 and a quantity of LSD. He said he bought it from the regular patron that he had previously reported.

The affidavit provides no specific information about the credibility of the four informants. There is no indication that the informants provided information to the police in the past.

The other events described in the affidavit generally were the results of surveillance conducted outside and inside the Tavern. Law enforcement officers observed a regular pattern of persons entering the Tavern and leaving a short time later. In one instance, the officer observed a person leave the Tavern, enter his car and snort a substance the officer believed to be drugs. In another, persons left the Tavern, went to their automobile and passed around a cigarette which may have been marijuana. Surveillance within the bar showed a lot of activity at the rear near the "fooze ball machine."

The information gained by the officer from other sources about the employees—e.g., name, description, etc.—confirmed that supplied by the informants. In addition, the affiant determined that the bartender had been convicted of possession of marijuana two years earlier.

Based on the above information, the judicial officer issued a warrant to search the Tavern and the person of all employees present (named as the bartender, the defendant and the tavern owner) for drugs, records and paraphernalia used in drug trafficking. Upon the execution of the warrant, defendant was detained and taken to the police barracks. A search there found twenty-four packages of cocaine and $40 in cash.

The second search took place eight days later. The affidavit in support of the application for the second search warrant relied on the earlier affidavit and the results of the earlier search. In addition, the affiant stated that one day earlier an informant reported witnessing a drug sale in the Tavern. The sale was made by the bartender. The substance sold was retrieved and found to be cocaine.

Again defendant was detained during the search and taken to the police station. Again a quantity of cocaine and cash was found on the defendant.

## II. DECISION BELOW

The defendant moved below to suppress the evidence obtained during the searches. The trial court granted the motion, finding numerous deficiencies in the affidavits. The court's conclusion emphasizes two defects: (1) there was inadequate information in the affidavit to tie defendant to drug activities at the Tavern and to support a finding that a search of defendant *at the Tavern* would turn up drugs; and (2) there was no information in the affidavit to allow the judicial officer to evaluate the credibility of the informants.

This interlocutory appeal seeks review of the suppression decision.

## III. ISSUES

In the trial court, defendant based his motion to suppress on the Fourth Amendment to the United States Constitution; Article Eleven, Chapter One of the Vermont Constitution; and V.R.Cr.P. 41(c). In this Court, he argues that the difference between the two constitutional attacks involves the applicability of the United States Supreme Court decision in *Illinois* v. *Gates*, 462 U.S. 213 (1983). While he agrees that *Gates* sets the applicable standard for purposes of the United States Constitution, defendant urges that we reject the rationale of *Gates* under the Vermont Constitution and instead apply the pre-*Gates* standard from the leading cases of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). He further argues that use of the pre-*Gates* standard is required by V.R.Cr.P. 41(c).

The State bases its appeal on the *Gates* standard and urges rejection of an independent state constitutional rule for evaluating probable cause to support search warrants. Further, the State argues that the fruits of the search should be admissible based on the good faith exception to the exclusionary rule announced in *United States* v. *Leon*, 468 U.S. 897 (1984), and *Massachusetts* v. *Sheppard*, 468 U.S. 981 (1984). The defendant responds to the latter argument by urging that we reject a good faith exception to the exclusionary rule under the Vermont Constitution.

It is unnecessary for us to reach many of the issues raised by the parties. See, e.g., *People* v. *Landy*, 59 N.Y.2d 369, 452 N.E.2d 1185, 465 N.Y.S.2d 857 (1983) (unnecessary to decide whether to use *Gates* under the state constitution). Our standard

for issuance of warrants based on hearsay is contained in V.R.Cr.P. 41(c). That rule requires that "there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is factual basis for the information furnished." The rule adopts the *Aguilar* and *Spinelli* standards. See Reporter's Notes to V.R.Cr.P. 41(c). Accordingly, the *Gates* standard is not applicable in Vermont unless V.R.Cr.P. 41(c) is modified.[1]

■ We find that the warrants in this case are valid under the standards announced in *Aguilar* and *Spinelli* as embodied in V.R.Cr.P. 41(c) and reverse.[2] Accordingly, we need not decide whether, if the warrants were found invalid, the fruits of the search would be admissible under a good faith exception to the exclusionary rule. See *State* v. *Potter*, 148 Vt. 53, 59 n.4, 529 A.2d 163, 167 n.4 (1987).

## IV. ANALYSIS

For purposes of analysis, we can break down the questions in this case into two: (1) whether there was probable cause to conduct a search of the Tavern for drugs and records and paraphernalia associated with drug sales; and (2) whether there was probable cause to search defendant at the Tavern. The first question depends upon the reliability of the information supplied by the confidential informants.

■■ Probable cause exists when the information provided to the judicial officer "show[s] circumstances from which a 'man of reasonable caution' would conclude that a crime has been or is

---

[1] The State has not challenged V.R.Cr.P. 41(c) as setting a standard beyond that required by the Constitution. We offer no opinion on the validity of such a challenge.

[2] Our disposition makes it unnecessary to discuss in detail the extent to which the exclusion of the evidence is the remedy for violation of V.R.Cr.P. 41. Part (f) of the rule indicates a motion to suppress is the remedy for an "unlawful search and seizure." The rule is consistent with our decision in *State* v. *Badger*, 141 Vt. 430, 452-53, 450 A.2d 336, 349 (1982), which holds that evidence obtained in violation of the Vermont Constitution must be suppressed. While suppression may not be warranted for all violations of V.R.Cr.P. 41, we believe that failure to meet the *Aguilar* and *Spinelli* requirements as codified in Rule 41(c) would go to the heart of the probable cause finding and thus make the search pursuant to the warrant "unlawful." See *People* v. *Sherbine*, 421 Mich. 502, 512, 364 N.W.2d 658, 662-63 (1984) (violation of Michigan statute that codifies *Aguilar* and *Spinelli* tests requires suppression of the evidence obtained in the search).

being committed and that evidence of that crime will be found in the place to be searched." *State* v. *Howe*, 136 Vt. 53, 61, 386 A.2d 1125, 1130 (1978) (citations omitted). Where part or all of the information provided to the judicial officer comes from confidential informants, V.R.Cr.P. 41(c) requires the information to meet a two-prong test set forth in the *Aguilar* and *Spinelli* decisions. See *State* v. *Howe*, 136 Vt. at 61, 386 A.2d at 1130; *State* v. *Barrett*, 132 Vt. 369, 320 A.2d 621 (1974); *State* v. *Rocheleau*, 131 Vt. 563, 313 A.2d 33 (1973). The test addresses two concerns: (1) that the judicial officer rather than the law enforcement officers makes the determination from the underlying facts that probable cause is present; and (2) that the information on which the determination is based is reliable. Thus, the first prong requires that the affidavit transmit the factual basis for any conclusions drawn by the informant so that the judicial officer can perform an independent analysis of the facts and conclusions. *State* v. *Barrett*, 132 Vt. at 373, 320 A.2d at 624-25. The second prong requires that facts be presented to the judicial officer that show either the informant is inherently credible or that the information from the informant is reliable on this occasion. 1 W. LaFave, Search and Seizure § 3.3(a), at 613 (2d ed. 1987). These tests apply only to the hearsay component of any information provided to the judicial officer. V.R.Cr.P. 41(c); *State* v. *Barrett*, 132 Vt. at 374, 320 A.2d at 625.

■ Additional principles are important to our review of whether the actions of a judicial officer in issuing a warrant met the *Aguilar* and *Spinelli* tests. Affidavits must be viewed in a common sense manner and not be subjected to hypertechnical scrutiny. *State* v. *Moran*, 141 Vt. 10, 16, 444 A.2d 879, 882 (1982). We are cautioned against a "grudging or negative attitude . . . toward warrants" because that attitude will encourage warrantless searches. *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965). "[D]etermination[s] of probable cause should be paid great deference by reviewing courts." *Spinelli* v. *United States*, 393 U.S. at 419 (citing *Jones* v. *United States*, 362 U.S. 257, 270-71 (1960)). Resolution of "doubtful or marginal cases" should be largely determined by the preference to be accorded warrants. *Jones* v. *United States*, 362 U.S. at 270.

There is no question that the hearsay information in this case meets the first prong of the *Aguilar* and *Spinelli* tests. With few exceptions, the information was based on first-hand observations of the informants and was set forth in detail rather than con-

clusory form. Compare *State* v. *Barrett*, 132 Vt. at 374, 320 A.2d at 625.

Defendant's attack largely relies on the second prong because the affiant provides no information to show that the four informants are inherently credible. While there is no history to show veracity, we find that there is extensive evidence from which the judicial officer could find reliability of the information provided in this particular case.

Most of the statements from the informants were admissions against penal interest, an indicia of truthfulness.[3] *United States* v. *Harris*, 403 U.S. 573 (1971). Much of the detail of the informants' information was corroborated by information independently gained by the affiant-police officer. For example, extensive surveillance of the Tavern showed persons entering and leaving within a very short period of time—actions consistent with drug purchases, not purchases of food or drink. Interior surveillance showed activity to the rear of the bar near the "fooze ball machine,"—as reported by the informants. The affiant observed persons who left the Tavern engaged in conduct that appeared to be drug usage. The information about employees of the Tavern given by the informants was all confirmed by the affiant.

It is also significant that the affiant used four separate informants. Each told essentially the same story about activity at the Tavern. Thus, each informant corroborated the statements of the others while, at the same time, supplying information to the affiant.

Finally, the most important and current information from the fourth informant came from a carefully controlled and set up drug purchase. The judicial officer could believe this drug

---

[3] The statements implicated the informants in drug sales and use. *Aguilar* and *Spinelli* announced tests on use of hearsay, and thus it is appropriate to look to exceptions to the hearsay rule since these exceptions involve a judicial recognition that the circumstances under which the hearsay statement is made can indicate credibility. See V.R.E. 804(b)(3) (statement against interest). Our adoption of this hearsay exception has clear limits because of the chance it will be misused in criminal cases either to exculpate the defendant or to implicate him in a crime with the hearsay declarant. See Reporter's Notes to V.R.E. 804. Despite the adoption of this method of showing reliability of an informant's statement in *United States* v. *Harris*, there is no question that the "admission against penal interest" exception can be misused. See 1 W. LaFave, Search and Seizure § 3.3(c). Accordingly, we cite this factor as one bearing on the informants' reliability in this case but do not give it controlling weight.

purchase occurred in the Tavern without relying to any great extent on hearsay from the fourth informant. See *State* v. *Barrett*, 132 Vt. at 373, 320 A.2d at 624-25. This purchase in turn served to corroborate other information from the informant.

We find therefore that both prongs of the *Aguilar* and *Spinelli* tests as embodied in V.R.Cr.P. 41(c) are met and that the hearsay information of the four informants could be considered by the judicial officer in determining probable cause. Once the informants' information is considered, there was a very strong likelihood that the crime of sale of drugs was occurring in the Tavern and evidence would be found there.[4]

Based on the determination of probable cause for the first search, the judicial officer's determination of probable cause for the second search was much easier. He could consider the facts of the first search, including the drugs found on defendant. The information from the fifth confidential informant, used in the affidavit for the second search, showed that drug sales were continuing in the Tavern despite the first search.

Having concluded that there was probable cause to search the Tavern, we must next decide whether there was probable cause to search the defendant. Where a person is to be searched, the demonstration of probable cause must be "particularized with respect to that person." *Ybarra* v. *Illinois*, 444 U.S. 85, 91 (1979).

The affidavit contained information of the defendant's direct involvement in drug sales and of drug sales at the Tavern where the defendant was employed. The trial court concluded that the latter information was not sufficiently "tied" to the defendant to be considered in the determination of whether probable cause existed to search the defendant and that the former was insufficient by itself to establish probable cause. The State correctly asserts that these conclusions were in error.

The affidavit contained detailed information of a pattern of widespread drug trafficking in and around the Tavern, suggesting that the Tavern was being used to front a criminal enterprise for the sale of drugs. Information supplied by the informants recounted drug sales by the owner and employees of the Tavern, and described a variety of drugs that were for sale, their prices,

---

[4] Our finding on the informants' statements makes it unnecessary for us to determine whether probable cause could be found even if the informants' statements were excised.

and how they were packaged. The defendant was directly implicated in one sale that occurred at the Tavern, and in one sale which originated there, although consummated at the defendant's apartment. This was direct evidence of his involvement in discrete drug sales. From the evidence of involvement in specific sales and his employment at the place where widespread drug trafficking was being conducted, it is reasonable to infer the defendant's general involvement in the enterprise as well.

In *United States* v. *Hillison*, 733 F.2d 692, 697 (9th Cir. 1984), the court identified a number of factors which are helpful in determining when it is reasonable to infer that a defendant is participating in a criminal enterprise, based on his association with persons known to be engaging in criminal activity.

> One important consideration . . . is whether the known criminal activity was contemporaneous with the association. Another is whether the nature of the criminal activity is such that it could not normally be carried on without the knowledge of all persons present.

*Id.* (citations omitted). The defendant was employed as the Tavern's bouncer while the Tavern was under investigation, and the evidence of the drug trafficking scheme gathered. The defendant's association was, therefore, contemporaneous. Further, as stated in *Hillison*, "it taxes credulity to assert that [the defendant] spent as much time [at the Tavern] as he did during the period of surveilance [sic] without knowing about [the] drug dealing activity." *Id.* The evidence of widespread drug trafficking at the Tavern during the period of his employment thus was probative of his participation in criminal conduct, and in the determination of whether evidence of such conduct would be found on his person. See *United States* v. *Moses*, 796 F.2d 281, 284 (9th Cir. 1986). Compare *Lippert* v. *State*, 664 S.W.2d 712, 720-21 (Tex. 1984) (Defendant, who was known to frequent house to be searched but was not target of investigation, appeared at house fifteen minutes after search begun; probable cause found lacking.).

Defendant contends that the Court's holding in *Ybarra* is controlling, dictating affirmance of the trial court's ruling. His reliance on *Ybarra* is decidedly misplaced. In *Ybarra*, the defendant was a patron in a bar when the bar and all employees and patrons were searched under authority of a warrant which named the bar and one employee, a bartender named Greg, as the objects of the

search. *Ybarra* v. *Illinois*, 444 U.S. at 88. The search of the defendant was in accordance with an Illinois statute allowing the search of unnamed persons present in a bar searched pursuant to a warrant naming the bar. *Id.* at 96 n.11. The Court determined that "[t]here is no reason to suppose that, when the search warrant was issued . . . the authorities had probable cause to believe that any person found on the premises of the Aurora Tap Tavern, aside from 'Greg,' would be violating the law," *id.* at 90 (footnote omitted), and concluded that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91 (citation omitted).

■ The defendant in this case more resembles "Greg" than the defendant patron in *Ybarra*. Like "Greg," the defendant was an employee of a tavern engaged in drug transactions, and was named in the warrant, authorizing the search of the tavern. The evidence set forth in the affidavit described the same nexus between the defendant and the searched tavern, as in *Ybarra*, and established that the defendant was the subject of a search, not because of his mere "propinquity to others independently suspected of criminal activity," *id.* at 91, "but because his behavior . . . suggested that he was playing a specific role within that pattern." *United States* v. *Arrellano-Rios*, 799 F.2d 520, 523 (9th Cir. 1986). As the Court found that the warrant properly authorized a search of "Greg" in *Ybarra*, 444 U.S. at 92, so here the warrant properly authorized a search of the defendant. The trial court's granting of the pretrial motion to suppress must be reversed.

*Reversed and remanded.*