## State of Vermont v. David Platt, Jr.

[574 A.2d 789]

No. 89-130

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed April 6, 1990

*Dan M. Davis,* Windham County State's Attorney, and *Karen E. Russell,* Deputy State's Attorney, Brattleboro, for Plaintiff-Appellant.

*Hedy A. Harris,* Brattleboro, and *Kenneth J. Fishman* of *Bailey & Fishman,* Boston, Massachusetts, for Defendant-Appellee.

**Gibson, J.** Appellant State of Vermont, by interlocutory appeal, seeks reversal of a pretrial order suppressing evidence obtained from defendant's automobile, which had been seized without a warrant pursuant to a murder investigation. We reverse and remand the case to the trial court for further proceedings.

## I.

In February of 1987, the Vermont state police became involved in the investigation of a homicide when the New Hampshire state police, who had found an unidentified body in a rest area in that state, linked the victim to a residence in Vermont. Based on information supplied by two informants, the police suspected that defendant and another individual had committed the homicide. On March 16, 1987, the two suspects, having learned of police suspicions, left Vermont and headed for New York. The police searched defendant's room that same day with the consent of his landlord, and on the three subsequent days pursuant to two warrants. The second warrant, issued on March 19, was partly predicated on new information provided by another informant, who, after previous denials, confessed that he himself had acted as a lookout while defendant and another individual committed the crime.

On that same day, an arrest warrant was issued for defendant and the other suspect, and the Vermont police sent out a teletype to other jurisdictions, including Massachusetts, requesting that authorities arrest the suspects and hold their vehicle. No warrant was issued for the search or seizure of the vehicle.

Having been informed that defendant's car may have been left in Greenfield, Massachusetts, the Vermont police telephoned the Massachusetts state police on March 20 and asked them to look for the car there.

The Massachusetts police located the car legally parked in a large parking lot in an open mall and seized the vehicle without searching it and without knowing whether Vermont had a warrant to seize it. Relying on the fact that Massachusetts law permitted them to seize a vehicle without a warrant if there were probable cause that it was connected to a homicide, the police seized defendant's car based solely on the assertion by the Vermont police that it could contain evidence of a homicide. The car was transported to Brattleboro, where, on March 24, the Vermont police obtained a search warrant and then proceeded to search the car for the first time. Meanwhile, also on March 24, the two suspects were arrested in New York City.

Defendant was arraigned on April 14, 1987 on a charge of first-degree murder. On December 28, 1988, after an evidentiary hearing on pretrial motions, the district court granted defendant's motion to suppress evidence seized from the car. The court concluded that a warrantless seizure of an automobile required both probable cause and exigent circumstances, and that exigent circumstances were not present in the instant case; accordingly, the court ordered that all evidence obtained from the subsequent search be suppressed as "tainted fruit of the poisonous tree." The State appeals from this order, claiming that (1) the warrantless seizure of the car was valid because the defendant had abandoned the car, (2) the warrantless seizure was proper under the "automobile exception," and (3) the search of the car pursuant to warrant was valid because the warrant was based on information wholly independent of any evidence that might have been illegally seized.

We conclude that, although the evidence does not support a finding of abandonment, the warrantless seizure and subsequent authorized search of defendant's car were proper under both the United States and the Vermont Constitutions; accordingly, evidence obtained as a result thereof is admissible at defendant's trial.

## II.

Chapter I, Article 11 of the Vermont Constitution provides:

That the people have a right to hold themselves, their houses, papers, and possessions, free from search or seizure; and therefore warrants, without oath or affirmation first made, affording sufficient foundation for them, and whereby by any officer or messenger may be commanded or required to search suspected places, or to seize any person or persons, his, her or their property, not particularly described, are contrary to that right, and ought not to be granted.

Although Article 11 generally requires that a warrant be obtained before an official search or seizure, "it does not contemplate an absolute prohibition on warrantless searches and seizures." *State v. Jewett*, 148 Vt. 324, 328, 532 A.2d 958, 960 (1986); see also *State v. Record*, 150 Vt. 84, 85, 548 A.2d 422, 423 (1988) (Vermont Constitution forbids only unreasonable searches and seizures—the word "unreasonable" is implicit in Article 11). For instance, in *State v. Badger*, 141 Vt. 430, 454–55, 450 A.2d 336, 350 (1982), this Court upheld the warrantless seizure of bloodstained shoes from a murder suspect where the police employed the least restrictive method to obtain incriminating evidence that was openly displayed to the public and vulnerable to easy destruction.

We have yet to consider the "automobile exception" to the warrant requirement under Article 11 of the Vermont Constitution. Our previous decisions addressing the "automobile exception" under the Fourth Amendment were based on prior federal precedent and insisted on the presence of probable cause and exigent circumstances. See *State v. Girouard*, 135 Vt. 123, 129–33, 373 A.2d 836, 840–43 (1977); *State v. Ibey*, 134 Vt. 140, 144–45, 352 A.2d 691, 694 (1976); *State v. Murray*, 134 Vt. 115, 118, 353 A.2d 351, 354 (1976). Early federal case law regarding the "automobile exception" emphasized the impracticability of obtaining a warrant to search or seize a vehicle that had been stopped while moving, see, e.g., *Carroll v. United States*, 267

U.S. 132, 153 (1925), and, therefore, the cases were often analyzed under an "exigent circumstances" rationale. See, e.g., *Ramon v. Cupp*, 423 F.2d 248, 249 (9th Cir. 1970) ("Exigencies do not exist when the vehicle and the suspect are both in police custody."). Courts readily found exigent circumstances where the police located a parked car containing incriminating evidence and either the defendant or his family, friends, or accomplices had an opportunity to tamper with it. See, e.g., *United States v. Farnkoff*, 535 F.2d 661, 666 (1st Cir. 1976).

Recent federal case law, however, has emphasized that, in addition to the ready mobility factor, a second justification for the automobile exception arises from the reduced expectation of privacy that attaches to motor vehicles due to their pervasive regulation. See *California v. Carney*, 471 U.S. 386, 391–93 (1985). Relying on this justification, courts have upheld warrantless searches and seizures of vehicles based solely on a showing of probable cause, regardless of whether exigent circumstances existed. See *United States v. Bagley*, 772 F.2d 482, 491 (9th Cir. 1985), *cert. denied*, 475 U.S. 1023 (1986); 3 W. LaFave, Search and Seizure § 7.2(b), at 39 n.65 (1987). Thus, it is clear that under current interpretation of the Fourth Amendment the warrantless seizure of defendant's vehicle did not require a finding of exigent circumstances, and the evidence could not properly be suppressed on that basis.

■ In interpreting the Vermont Constitution, however, we may, rather than follow federal precedent, restrict police conduct to a greater extent than does case law pursuant to the United States Constitution. See *State v. Badger*, 141 Vt. at 449, 450 A.2d at 347. Indeed, many sister states continue to require a showing of exigent circumstances in addition to probable cause before allowing warrantless searches and seizures of vehicles. See, e.g., *State v. Ritte*, 68 Haw. 253, 257, 710 P.2d 1197, 1201 (1985); *State v. Kock*, 302 Or. 29, 33, 725 P.2d 1285, 1287 (1986).

## A.

We must first determine whether there was probable cause for the warrantless seizure of defendant's car and its post-sei-

zure search pursuant to search warrant. We note at the outset that information leading to the issuance of the search warrant was the same information relied upon by the police in seizing defendant's car and was obtained from sources independent of evidence gathered as a result of the seizure.

Defendant contends that both the seizure of his car and its subsequent search were invalid because neither was based on probable cause. Defendant further contends that the Vermont police intentionally omitted information from the affidavit upon which the search warrant was based that, if added, would have precluded issuance of the warrant by a neutral magistrate. Although the trial court did not specifically address the issue of whether the search warrant was founded on probable cause, the court did determine that, based on the information obtained from the Vermont police, ample probable cause existed for the Massachusetts police to seize the car. We conclude that the information relied upon by the police in seizing the car and set forth in the affidavit in support of the search warrant constituted probable cause for the police to seize the car and for a detached magistrate to issue the warrant to search the car.

Defendant first claims that probable cause did not exist because there was no showing that the informant on whom the police relied was credible and because the basis of the informant's knowledge regarding defendant's car was unsupported. We disagree. In order to support the issuance of a search warrant, probable cause must be "based upon substantial evidence, which may be hearsay in whole or part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." V.R.Cr.P. 41(c). In *State v. Ballou*, 148 Vt. 427, 434, 535 A.2d 1280, 1284 (1987), we reiterated that affidavits "must be viewed in a common sense manner and not be subjected to hypertechnical scrutiny." The key inquiry in determining whether probable cause exists is whether the information provided in the affidavit reveals circumstances from which a person of reasonable caution would conclude that a crime has been committed and that evidence of the crime will be found in the place to be searched. *Id.* at 433–34, 535 A.2d at 1284. In

*Ballou*, we reversed a trial court suppression order despite the fact that the underlying warrant was supported by an affidavit that did not provide specific information about the credibility of the four informants. We held that probable cause existed to issue the warrant, since there were four informants and the informants' statements were admissions against penal interest, were based on first-hand observations, and were corroborated by information independently gained by the police. *Id.* at 434–35, 535 A.2d at 1284.

The instant case is similar in several respects. In the March 24 affidavit, an officer with the Vermont state police averred that a probable murder victim, whose body was found in New Hampshire, had been living in Vermont at the time of his death, that two separate, named informants had linked defendant to the crime, and that a third informant who had admitted to participating in the crime had stated that the murder victim and his personal belongings were transported in defendant's car. As in *Ballou*, more than one informant linked defendant to the crime. Although only one of the informants directly linked evidence of the murder with defendant's car, the fact that the body had been transported to another state and that the informant admitted to participating in the crime constitute sufficient indicia of truthfulness for a detached magistrate to conclude that evidence of a crime would more likely than not be found in defendant's car.* See *id.*; see also *State v. Brown*, 151 Vt. 533, 535–36, 562 A.2d 1057, 1058–59 (1989) (standard for probable cause is whether evidence of a crime "more likely than not" will be found in a particular place; standard met even though court knew little about informants because their information was corroborated by each other and by other information previously gained by police).

■■ Next, defendant claims that the police affidavit intentionally omitted the fact that the third informant, who linked evidence of the crime with defendant's car, twice denied any

---

* We agree with the trial court that the police were justified in concluding that forensic evidence of a crime could still be found in the car or that defendant could have moved evidence of the crime when he left his residence, despite the fact that the crime had taken place fifteen months earlier.

knowledge of the crime and eventually implicated himself in the murder. This argument has little merit. First, defendant's contention that the information was intentionally omitted is mere speculation. More importantly, the fact that the informant denied involvement in the crime, but then confessed, particularly in light of the information previously gathered by the police, could be construed as a further indication of truthfulness. See *State v. Ballou*, 148 Vt. at 435, 535 A.2d at 1284–85. In any case, the affidavit would have supported issuance of the search warrant even if the omitted information had been inserted. See *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978). Thus, we conclude that probable cause existed both for the warrantless seizure of defendant's vehicle and for the subsequent issuance of a warrant to search the vehicle.

## B.

Having determined that the police had probable cause to seize defendant's vehicle, we must next determine whether the warrantless seizure of the vehicle under the circumstances of this case violated Article 11. We note initially that the Vermont state police did not learn that defendant's car might contain evidence of a murder until March 19, 1987, the same day they notified police in Greenfield, Massachusetts to be on the lookout for the car and the day before the car was located and seized. The previous day, March 18, the Vermont police first learned that defendant's car might have been left in Greenfield, but they were not certain of that fact or the exact location of the car. Therefore, it was reasonable for them to delay obtaining a warrant pending further investigation. As the United States Supreme Court has stated:

> [W]e know of no case or principle that suggests that ... the reasonableness of seizing a car under exigent circumstances [is] foreclosed if a warrant was not obtained at the first practicable moment. ... The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.

*Cardwell v. Lewis*, 417 U.S. 583, 595–96 (1974).

Upon locating defendant's vehicle on March 20, Massachusetts police seized the vehicle and had it transported to Massachusetts state police barracks. At the time the vehicle was seized, neither the Massachusetts nor the Vermont police knew the whereabouts of defendant or his companion. Thus, for all they knew, the car and the incriminating evidence could have been removed by defendant or a friend at any time. Based on these facts, we conclude that it was reasonable and proper for the police to seize the vehicle and hold it to preserve the evidence pending the issuance of a search warrant. See *State v. Cullor*, 315 N.W.2d 808, 813 (Iowa 1982); *State v. Sapiel*, 432 A.2d 1262, 1267–68 (Me. 1981); *State v. Bean*, 120 N.H. 946, 948, 424 A.2d 414, 415–16 (1980).

By merely seizing defendant's car and holding it for a reasonable amount of time before obtaining a warrant to search it, the police acted in the least intrusive manner possible under the circumstances. Cf. *State v. Brown*, 301 Or. 268, 275, 283, 721 P.2d 1357, 1361, 1366 (1986) (on-the-scene search of *mobile* vehicle is no greater government intrusion than seizure); *State v. Reid*, 38 Wash. App. 203, 208, 687 P.2d 861, 865 (1984) (seizure of car keys was reasonable intrusion limited in scope to the extent necessary to secure automobile). Although the seizure of defendant's car intruded upon his possessory rights in the car, his privacy rights were not violated since the car was not searched until the police obtained a warrant. Cf. *Cardwell*, 417 U.S. at 590, 592-93 (seizure of defendant's car and examination of car's exterior did not implicate owner's privacy interest).

Moreover, most courts have concluded that the police may seize a vehicle containing incriminating evidence rather than post a guard pending the procurement of a search warrant. *Cullor*, 315 N.W.2d at 813–14; *Bean*, 120 N.H. at 948, 424 A.2d at 416. We agree. Assuming the police had staked out defendant's car in the parking lot in Greenfield and defendant or an accomplice had arrived to drive it away before a warrant could be obtained, the police surely could then have seized the car because of exigent circumstances. Consequently, the immediate seizure of the vehicle was justified as no more invasive of defendant's rights than if the police had guarded the car and pre-

vented defendant or an accomplice from removing it. See *Cullor*, 315 N.W.2d at 814; cf. *Badger*, 141 Vt. at 454, 450 A.2d at 350 (seizure of bloodstained shoes far less restrictive than restraining defendant). Furthermore, the immediate seizure in the instant situation was safer for defendant, police, and potential bystanders.

In brief, we hold that Article 11 permits the warrantless seizure of an unoccupied vehicle for a reasonable amount of time before a warrant can be obtained where there is probable cause that the car contains evidence of a crime. We need not address the issue of whether a warrantless search under the instant circumstances would have been permissible under Article 11 of the Vermont Constitution inasmuch as a warrant was obtained before any search was conducted. Finally, as noted earlier, we conclude that the seizure of defendant's car was permissible under the Fourth Amendment of the United States Constitution. See *California v. Carney*, 471 U.S. at 390–95.

*Reversed and remanded.*