## STATE of Vermont v. Ray G. RICHARDSON

[603 A.2d 378]

No. 90-240

January 3, 1992. Defendant appeals his conviction for first-degree murder, asserting (1) that the trial court should not have allowed a rifle into evidence because it was seized in violation of the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution, and (2) it was plain error for the trial court to permit expert testimony on the manner of the victim's death. We affirm.

Driving alone with a suspended license and after he had been drinking, defendant pulled into a driveway late at night. A police officer, who had noticed that one of defendant's headlights was out, followed and turned on his blue lights. Defendant got out of the car and shut the door, and then reentered the car to turn on the lights so that he and the officer could inspect them. When he got out of the car again, he left the door open, allowing the officer to see a rifle protruding from under the driver's seat. The officer smelled alcohol and asked defendant to perform a dexterity test, which he failed. The officer arrested defendant for driving under the influence and driving with a suspended license. A pat-down search of defendant revealed a pipe and a bag of marijuana, and defendant was handcuffed and placed in the cruiser of another officer who had arrived at the scene. Without obtaining a warrant, the officers seized the rifle and briefly searched the car, which they then had towed away. They learned later that defendant was a murder suspect in the death of a friend, whose body was discovered subsequent to the arrest.

In *Cady v. Dombrowski*, 413 U.S. 433 (1973), the United States Supreme Court upheld the admission of a handgun seized without a warrant from a vehicle the defendant had crashed while drunk. The seizure was made pursuant to standard police procedure more than two hours after the car had been towed away. The Court found the seizure justified by "concern for the safety of the general public who might be endangered if an intruder removed [the] revolver." *Id.* at 447. Although the police here had no established departmental procedures to guide them, we find no violation of the Fourth Amendment. The officers acted with obvious prudence in seizing the rifle, which was clearly visible when the car door was open, before having the car towed away. See *United States v. Feldman*, 788 F.2d 544, 552 (9th Cir. 1986) ("[S]wift and effective action by an officer to secure a gun which he or she reasonably believes to be in an empty impounded car should be recognized as 'standard police procedure . . . .'"), *cert. denied*, 479 U.S. 1067 (1987).

Article 11 offers free-standing protection from unreasonable searches and seizures in Vermont. See *State v. Savva*, 159 Vt. 75, 84, 616 A.2d 774, 779 (1991); *State v. Berard*, 154 Vt. 306, 309, 576 A.2d 118, 120 (1990). In interpreting Article 11, we have adopted the test suggested by Justice Blackmun in his concurring opin-

ion in *New Jersey v. T. L. O.*, 469 U.S. 325, 351 (1985), and will abandon the warrant and probable-cause requirement "[o]nly in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Berard*, 154 Vt. at 310–11, 576 A.2d at 120–21. Under the facts of this case, we agree with the rationale of *Dombrowski*, at least when a firearm is exposed to plain view. Left unattended, a rifle poses an unacceptable danger to the public at large. Thus, we conclude that the circumstances confronting the police presented an exceptional circumstance that allowed them to make a reasonable seizure without requiring the prior approval of the judiciary. See *id.* at 312, 576 A.2d at 121 (upholding random, warrantless search of prison cell); *State v. Platt*, 154 Vt. 179, 189, 574 A.2d 789, 794–95 (1990) (immediate warrantless seizure of suspect's car was "safer for defendant, police, and potential bystanders").

Defendant next argues it was plain error for the court to allow the medical examiner to give expert testimony that the victim died by homicide, not suicide. He asserts that this testimony offered more of a legal than medical conclusion, and impermissibly intruded upon the role of the jury. See Reporter's Notes to V.R.E. 704 ("trial court is free to exclude testimony that gratuitously tells the jury what conclusion to reach"). We disagree. The testimony was not a comment on defendant's guilt or innocence. If the jury believed that a crime had been committed, it still had to decide the ultimate question of whether defendant was at all involved in the homicide. In this respect, the case differs from *State v. Pinero*, 70 Haw. 509, 778 P.2d 704 (1989), a case relied upon by defendant, where the identity of the person who fired the shot was known, and the issue was whether the shot was accidental. In *Pinero*, testimony that the death was a homicide went directly to the issue of guilt or innocence, and the court concluded that it "told the jury what result to reach." *Id.* at 521, 778 P.2d at 712. Other jurisdictions, however, have allowed opinion testimony on the manner of death even where the identity of the assailant was not contested. See, e.g., *State v. Washington*, 581 A.2d 1031, 1033 (R.I. 1990) (judge admitting testimony that death was homicide had discretion to decide whether it would aid the jury); *Fridovich v. State*, 489 So. 2d 143, 145 (Fla. Dist. Ct. App. 1986) (finding error in exclusion of medical examiner's testimony on possibility that accident caused fatal gunshot wound, court wrote, "[s]uch opinions may support a conclusion that a defendant is not guilty, but the opinions themselves are directed to expert inferences to be drawn from a set of facts, not personal opinions of guilt or innocence"); *Commonwealth v. Daniels*, 480 Pa. 340, 353, 390 A.2d 172, 178–79 (1978) (testimony that death was homicide did not remove from jury question of accused's criminal responsibility).

In the instant case, the jury was free to reject the contested testimony, and was so instructed. The admission of the evidence was neither error nor plain error.

*Affirmed.*