# State of Vermont v. Alexander Cooper

[652 A.2d 995]

No. 93-490

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed November 10, 1994

*Jeffrey L. Amestoy,* Attorney General, and *Susan R. Harritt,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*William K. Sessions III* and *Marybeth McCaffrey* of *Sessions, Keiner, Dumont & Barnes, P.C.,* Middlebury, for Defendant-Appellant.

**Gibson, J.** Defendant Alexander Cooper appeals from a conditional guilty plea to one count of conspiracy to deliver marijuana in violation of 13 V.S.A. § 1404. On appeal, defendant challenges the trial court's denial of his motion to suppress evidence of an Express Mail package that contained marijuana and served as the basis for the charge against him. We affirm.

On November 25, 1991, United States Postal Inspector Robert Sticht of Tucson, Arizona became suspicious of an Express Mail package addressed to a post office box in Manchester, Vermont. He contacted United States Postal Inspector Terrence Loftus in Hartford, Connecticut, advising Loftus that he suspected the package contained illegal narcotics. Inspector Sticht informed Inspector Loftus that the package was sent via Express Mail, a service

commonly used by narcotics distributors, that it originated from Tucson, a known narcotics distribution point, and that it contained a false return address. Inspector Loftus made arrangements to intercept the package in White River Junction, Vermont on November 26.

Inspector Loftus arrived in White River Junction on the evening of November 26. He retrieved the suspicious package from the White River Junction Post Office, and arranged to have a dog trained to detect narcotics sniff the package in Springfield at 7:00 a.m. the next morning. Inspector Loftus took the package to Springfield the following morning where it was placed on the floor with seven other packages of similar size. The dog reacted positively to the suspicious package, and the test was repeated; the dog singled out the suspicious package a second time. The package was then routed to Manchester while Inspector Loftus went to the United States District Court in Rutland to obtain a search warrant. After the search warrant issued and the package arrived in Manchester, the Manchester police opened it and found what they believed to be marijuana. The package was resealed and delivered to the addressee shortly after 12:00 p.m. on November 27. The addressee was subsequently arrested and named defendant as the person who mailed the package.

Defendant raises four arguments on appeal. Defendant first claims that Inspector Loftus did not have reasonable suspicion to justify his seizure of the Express Mail package in White River Junction, and therefore the seizure was illegal under the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution. Alternatively, he argues that even if there was reasonable suspicion to detain the package, the length of detention was unreasonable and therefore violated both the Fourth Amendment and Article 11. Defendant also argues that the evidence should be suppressed because the search warrant affidavit failed to meet the standard of V.R.Cr.P. 41(c). Finally, defendant contends that the canine sniff was an illegal search under Article 11. We address defendant's arguments in turn.

I.

A.

Defendant first claims that Inspector Loftus did not have reasonable suspicion to detain the Express Mail package as required by the Fourth Amendment. He argues that the package met only two of the seven elements that comprise the drug package profile used by

the postal service to detect illegal narcotics in the mails, specifically, the fictitious return address and the package's size and shape.[1] For reasonable suspicion, defendant contends, the package must fit a majority of the seven elements. The district court concluded that reasonable suspicion was established by the false return address, the fact that the package was sent Express Mail, the size, shape and weight of the package, and Inspector Loftus's knowledge that Tucson is a known origination point for illegal drug distribution. Thus, the court concluded, Inspector Loftus could lawfully detain the package to dispel or confirm his suspicions. We agree.

The Fourth Amendment to the United States Constitution protects individuals from unreasonable government searches and seizures. U.S. Const. amend. IV. Although postal authorities generally must have probable cause and a warrant to open and inspect mail, they may detain a mail package if they have reasonable suspicion that it is involved in criminal activity. *United States v. Van Leeuwen*, 397 U.S. 249, 251–52 (1970); see also *United States v. Lux*, 905 F.2d 1379, 1382 (10th Cir. 1990) (temporary detention of mail for investigative purposes not unreasonable seizure if based on reasonable suspicion of criminal activity). "Investigatory stops are permitted where 'specific and articulable facts which, together with the rational inferences taken therefrom, reasonably warrant the intrusion.'" *State v. Siergiey*, 155 Vt. 78, 81, 582 A.2d 119, 121 (1990) (quoting *State v. Ryea*, 153 Vt. 451, 454, 571 A.2d 674, 675 (1990)). We examine the totality of the circumstances in evaluating the existence of reasonable and articulable suspicion to justify an investigatory detention. *State v. Crandall*, 162 Vt. 66, 70, 644 A.2d 320, 323 (1994). We agree with the district court that there were sufficient specific and articulable facts to support a finding of reasonable suspicion warranting an investigatory detention of the Express Mail package.

■ The district court found that Express Mail is used regularly by drug traffickers to distribute narcotics, and packages containing contraband are often labeled with a fictitious return address. The court also found that Tucson is known by the Postal Service as a hub for illicit drug distribution. The Express Mail package defendant sent

---

[1] The profile characteristics include: "(1) size and shape of the package; (2) package taped to close or seal all openings; (3) handwritten or printed labels; (4) unusual return name and address; (5) unusual odors coming from the package; (6) fictitious return address; and (7) destination of the package." *United States v. Lux*, 905 F.2d 1379, 1380 n.1 (10th Cir. 1990).

had all three of these characteristics, and it was these characteristics together that raised the suspicions of Inspectors Sticht and Loftus. Although defendant maintains that each factor is insufficient to establish reasonable suspicion because each is consistent with innocent activity, law enforcement officers and courts are not required to look at each factor in isolation. Reasonable suspicion exists in cases like this where several specific and articulable facts, together with the inferences reasonably drawn therefrom, lead the officer to conclude that criminal activity may be afoot. We note that other courts have found reasonable suspicion to exist on similar facts. See, e.g., *State v. Gross*, 789 P.2d 317, 318–19 (Wash. Ct. App. 1990) (reasonable suspicion to hold Federal Express package for canine sniff where package had false return address, was sealed with duct tape, and was lightweight for package of its size); *State v. Gordon*, 464 N.W.2d 91, 94 (Wis. Ct. App. 1990) (reasonable suspicion to detain Express Mail package and submit for canine sniff where officer knew, through training and experience, that drugs are often distributed through the mails, package was mailed from state commonly known as drug distribution source, and anonymous informant tipped police that defendant was going to receive package containing marijuana). We agree with the district court that Inspector Loftus had reasonable suspicion to detain the package for further investigation.

## B.

Defendant also argues that Chapter I, Article 11 of the Vermont Constitution requires a higher standard of reasonable suspicion than does the Fourth Amendment, and that the higher standard was not met in this case. He contends that Article 11 gives privacy interests more protection than the Fourth Amendment, and because of that greater protection, Article 11 requires a different and higher reasonable suspicion standard. Defendant has not, however, identified any privacy interest implicated by the detention of the Express Mail package to justify a new and more stringent test in this case.

Chapter I, Article 11 of the Vermont Constitution,[2] like the Fourth Amendment, protects individuals from unreasonable government

---

[2] Article 11 provides:

> That the people have a right to hold themselves, their houses, papers, and possessions, free from search or seizure; and therefore warrants, without oath or affirmation first made, affording sufficient foundation for them, and whereby by any officer or messenger may be commanded or required to search suspected

searches and seizures. Its protection is aimed at an individual's possessory and privacy rights. *State v. Savva*, 159 Vt. 75, 89, 616 A.2d 774, 781 (1991). It is well settled that government seizures of personal property implicate possessory interests while searches implicate privacy interests. *Id.*; see also *State v. Platt*, 154 Vt. 179, 188, 574 A.2d 789, 794 (1990) (police seizure of vehicle intruded upon defendant's possessory rights, but privacy rights not implicated until police searched the vehicle). The detention of the Express Mail package was a seizure, not a search. We decline to articulate a heightened test for reasonable and articulable suspicion under Article 11 based on a privacy interest defendant fails to show was intruded upon by the detention.

## II.

Defendant next argues that Inspector Loftus unreasonably detained the Express Mail package in contravention to the Fourth Amendment and Article 11. The essence of defendant's argument is that because of the interception and canine sniff, the package was delivered three to three and one-half hours late. Defendant contends that the district court erred in finding that there was no delay because the package was delivered to Manchester on the day it was due. He argues that the three to three and one-half hours that elapsed between the scheduled and actual deliveries was unreasonable and interfered with his privacy interests.

We will not disturb the trial court's findings of fact on appeal unless they are clearly erroneous or unsupported by the evidence. *State v. Zaccaro*, 154 Vt. 83, 86, 574 A.2d 1256, 1258 (1990). During the suppression hearing, Inspector Loftus testified that Express Mail from Tucson to Vermont takes two days. Thus, a package sent from Tucson on November 25 would arrive at its Vermont address on November 27. He testified that had the package not been detained, it would have left White River Junction on November 27 between 1:30 and 2:00 a.m. for delivery to the Manchester Post Office. He further testified that even though the package was temporarily taken out of the mail stream, it was delivered as scheduled in the "normal course" on November 27. Although defendant argues vigorously that the package should have been delivered by 9:00 a.m. on the 27th, there is no evidence in the record relating to the precise time for delivery to

---

places, or to seize any person or persons, his, her or their property, not particularly described, are contrary to that right, and ought not to be granted.

the addressee. The evidence available to the trial court fully supports its finding that the package was delivered when due on November 27. Based on this record, we cannot say that the trial court's finding of no delay was clearly erroneous or unsupported by the evidence.

Assuming there was a three to three and one-half hour delay in the package's delivery, that delay did not exceed the permissible scope of investigative detentions based on reasonable suspicion. Defendant relies on *United States v. Place*, 462 U.S. 696 (1983), to support his contention that a three to three and one-half hour delay was unreasonable under the Fourth Amendment and Article 11. In *Place*, the Supreme Court held that a ninety-minute investigatory detention of an airline passenger's luggage exceeded the "permissible limits of a[n investigative] stop." *Id.* at 709. The Court reasoned that the defendant's liberty and possessory interests were intruded upon by the seizure of the luggage from the defendant's custody. *Id.* at 708. Because there is no liberty interest at stake in this case, *Place* is inapt.

 Unlike *Place*, Inspector Loftus did not seize the package from defendant's custody. Defendant relinquished custody and control over the Express Mail package to the Postal Service by placing the package in the mail stream. Even if defendant retained a possessory interest in the package upon mailing, any interference with that interest was de minimis. Cf. *United States v. Jacobsen*, 466 U.S. 109, 125 (1984) (warrantless seizure of Federal Express package and subsequent destruction of small amount of package's contents in narcotics field test was de minimis intrusion on Fourth Amendment possessory interest, and therefore reasonable); *Platt*, 154 Vt. at 188–89, 574 A.2d at 794–95 (warrantless seizure of murder suspect's automobile pending issuance of search warrant intruded upon possessory interests, but was least intrusive means of protecting potential evidence and permissible under Article 11). Defendant argues, however, that the detention interfered with his privacy interest in the package. As we stated in Part I.B, a government seizure of property implicates possessory, not privacy, interests. We fail to see how defendant's Fourth Amendment and Article 11 interests were unreasonably interfered with by a three to three and one-half hour delay in the package's delivery under these circumstances.

### III.

Defendant's third claim is that the evidence should be suppressed because the search warrant, issued by a federal judge, did not comply

with V.R.Cr.P. 41(c). Specifically, defendant claims that the affidavit in support of the warrant lacked an adequate factual basis on which the judge could find probable cause. He argues that the standard applicable to Vermont warrants, namely the standard set forth in Rule 41(c), rather than the federal standard employed by the issuing federal judge, should apply to the warrant in this case. We need not address the question of which law applies because we conclude that the warrant was valid under either standard.

In reviewing a warrant for compliance with Rule 41(c), the key inquiry is "whether the information provided in the affidavit reveals circumstances from which a person of reasonable caution would conclude that a crime has been committed and that evidence of the crime will be found in the place to be searched." *Platt*, 154 Vt. at 185, 574 A.2d at 793. Further, we give deference to the judicial officer's probable cause determination, and do not subject the supporting affidavits to "hypertechnical scrutiny." *State v. Ballou*, 148 Vt. 427, 434, 535 A.2d 1280, 1284 (1987).

Rule 41(c) requires that the probable cause finding be based on substantial evidence, and that evidence can be hearsay in whole or in part. If the supporting affidavit contains hearsay, the rule subjects the hearsay to a two-part test. First, the affidavit must convey the factual basis for any conclusions drawn by the hearsay informant; second, the facts must demonstrate to the judicial officer that the information is either reliable or the declarant inherently credible. *Id.* at 434, 535 A.2d at 1284. The purpose of this test is to ensure that the judicial officer has information "from which to make an independent determination of an informant's basis of knowledge and veracity." *State v. Bruyette*, 158 Vt. 21, 33, 604 A.2d 1270, 1276 (1992).

■ Defendant claims that the issuing judge could not determine whether the dog used for the sniff test was reliable because the affidavit lacked specific facts about its training. He asserts that the affidavit should have stated whether the training was recognized by law enforcement, whether the dog was certified, and whether that certification was current. Without this information, defendant argues, there was no way for the judge to determine independently if the dog was reliable. We disagree that Rule 41(c) requires this information.

■ The affidavit stated that the dog was "narcotic trained." A fair and reasonable inference from this statement would be that the dog, through experience and instruction, had the ability to detect narcotics. See *United States v. Venema*, 563 F.2d 1003, 1007 (10th Cir. 1977)

("train" in dictionary and common usage means "to instruct or drill in habits of thought or action," and judicial officer issuing search warrant could understand that dog "by reason of experience and training" had ability to sniff out narcotics). This is not the only fact, however, that the judge could rely upon to make an independent analysis. The affidavit stated that the dog was trained to detect specific controlled substances, among them marijuana, and that it participated in monthly training to identify these substances. Further, the affidavit noted that the dog reacted positively to the suspect package in two separate tests. These facts, in addition to the facts leading to reasonable suspicion, tend to corroborate the dog's positive alert, and were sufficient to permit the issuing judge to determine that the dog reliably indicated that the package contained narcotics.

██ Defendant claims that the warrant affidavit did not satisfy Rule 41(c) because Inspector Loftus's statement that the dog alerted to the package was not accompanied by a statement that he witnessed the "alert," or a statement describing the manner in which the dog alerted. Contrary to defendant's argument, the judge could readily infer the inspector's presence at the sniff test because the affidavit indicated that the inspector "retrieved" the package from the White River Junction post office on November 26, and the sniff test was done the following day. Moreover, the affidavit does not fail Rule 41(c) because it lacked a detailed analysis of the dog's behavior when it was exposed to the package containing marijuana. We believe it would be "hypertechnical" to require such statements in this case. The affidavit complied with Rule 41(c) by setting forth sufficient facts for the issuing judge to conclude that the Express Mail package contained illicit drugs.

█ The warrant also passes the "totality of the circumstances" test used by federal judges in issuing search warrants. See *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (probable cause sufficient to issue warrant must be analyzed by the totality of the circumstances set forth in the warrant affidavits). This standard requires the issuing magistrate to view the affidavit in a "common sense" manner, and determine whether, "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* In this case, there was a substantial basis for the issuing judge to conclude that there was probable cause to believe the Express Mail package contained narcotics.

Inspector Loftus's affidavit stated that based on his training and experience, illicit narcotics are commonly distributed by Express Mail, and that fictitious return addresses often appear on packages containing contraband. The inspector stated that he was informed by another postal inspector in Tucson that an Express Mail package bound for Manchester, Vermont contained a fictitious return address, and that Tucson is known as a city of origin for mail packages containing illegal narcotics. The affidavit described the canine sniff tests, and noted that the dog reacted positively to the Express Mail package in both tests. These facts meet the substantial evidence test, and were sufficient for the issuing judge to conclude that under the totality of the circumstances, there was a fair probability that the package contained illegal narcotics.

## IV.

Defendant's final claim of error is that the canine sniff was an unlawful search under Article 11. Recognizing that canine sniff tests are not Fourth Amendment searches, *Place*, 462 U.S. at 707, defendant urges us to conclude differently under the Vermont Constitution. He argues that a canine sniff test intrudes upon a reasonable expectation of privacy and, therefore, may be done only if authorized by a warrant based on probable cause. Defendant has waived this claim by failing to raise it in his motion to suppress before the trial court. See V.R.Cr.P. 12(b)(3) ("Motions to suppress evidence on the ground that it was illegally obtained" must be raised prior to trial); V.R.Cr.P. 12(f) (failure to raise issue required by V.R.Cr.P. 12(b) constitutes a waiver thereof). Defendant having failed to preserve this claim, we do not address it. *State v. Kasper*, 137 Vt. 184, 204, 404 A.2d 85, 96 (1979).

*Affirmed.*