DILLON, Judge.
 

 *455
 
 Rodney Edward Watson ("Defendant") appeals from the trial court's judgments convicting him of several drug-related offenses and declaring him a habitual felon. Specifically, he seeks review of the trial court's denial of his motion to suppress. For the following reasons, we vacate the judgments and remand for further proceedings consistent with this opinion.
 

 I. Background
 

 Officers with the Clayton Police Department received a tip from a confidential informant regarding "suspicious" packages that Defendant had retrieved from a local UPS store. Based on this tip, the police intercepted Defendant's vehicle a short distance from the UPS store. During
 
 *456
 
 the traffic stop, police conducted a canine sniff, which led to the discovery of illegal drugs inside the packages.
 

 Defendant moved to suppress the drug evidence, contending that the police lacked reasonable suspicion to initiate the traffic stop. The trial court denied Defendant's motion. A jury subsequently convicted Defendant. On the basis of this conviction, Defendant pled guilty to habitual felon status. Defendant gave oral notice of appeal.
 

 II. Standard of Review
 

 On appeal, Defendant challenges the trial court's order denying his motion to suppress. We review the order with the objective of "determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 

 *875
 

 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). Conversely, a "trial court's conclusions of law ... are fully reviewable on appeal."
 
 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000).
 

 III. Analysis
 

 Defendant contends that the trial court's findings were not sufficient to support its conclusion that the officer had reasonable suspicion to stop Defendant's vehicle. We agree.
 

 Before initiating a warrantless stop, a police officer must "have reasonable and articulable suspicion of criminal activity."
 
 Hughes
 
 ,
 
 353 N.C. at 206-07
 
 ,
 
 539 S.E.2d at 630
 
 . But if a stop is lacking in reasonable suspicion, any evidence generated from the stop is generally deemed inadmissible under the exclusionary rule.
 
 See
 

 State v. McKinney
 
 ,
 
 361 N.C. 53
 
 , 58,
 
 637 S.E.2d 868
 
 , 872 (2006) ("In short, evidence obtained in violation of an individual's Fourth Amendment rights cannot be used by the government to convict him or her of a crime."). An informant's tip may supply reasonable suspicion if the information provided reliably describes the suspect
 
 and
 
 establishes criminal activity.
 
 Hughes
 
 ,
 
 353 N.C. at 209
 
 ,
 
 539 S.E.2d at 632
 
 . Quoting the United States Supreme Court, our Supreme Court has stated:
 

 [A]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed
 
 *457
 
 criminal activity.
 
 The reasonable suspicion here at issue requires that a tip be reliable
 
 in its assertion of illegality, not just in its tendency to identify a determinable person.
 

 Id.
 

 (emphasis added) (quoting
 
 Florida v. J.L.
 
 ,
 
 529 U.S. 266
 
 , 272,
 
 120 S.Ct. 1375
 
 ,
 
 146 L.Ed.2d 254
 
 (2000) ).
 

 Here, the trial court found as follows: The informant, a Clayton UPS store employee, had been trained to detect narcotics. The informant had successfully notified the police about packages later found to contain illegal narcotics. These tips were used to secure a number of felony drug convictions.
 

 On the day in question, the informant advised the police that a man, later identified as Defendant, had arrived at the UPS store in a truck and retrieved four packages with a Utah return address
 
 when in fact
 
 the packages had been sent from Arizona. Specifically, the trial court found as follows regarding the informant's tip:
 

 The Confidential Informant informed [the officer] that the four packages had been shipped from Tuscan [sic], Arizona yet the address on the package stated it was shipped from Ogden, Utah.
 

 The Confidential Informant stated to [the officer] that a black male and a black female operating a black Chevrolet truck were the individuals picking up the four suspicious packages. The Confidential Informant provided the license plate number of the Chevrolet truck to [the officer].
 

 After receiving the tip, police arrived at the UPS store, observed Defendant driving away, and initiated a traffic stop.
 
 [1]
 

 We believe that based on the previous experience with the informant, the police acted reasonably in relying on the informant's tip to conclude that Defendant had retrieved packages with Arizona shipping addresses which were in fact shipped from Utah. A return address on a package which differs from the package's actual city of origin is a legitimate factor in a trial court's reasonable suspicion calculus. Still, there is nothing
 
 illegal
 
 about receiving a package with a return address which
 
 *458
 
 differs from the actual shipping address. Indeed, there are a number of innocent explanations for why this could have occurred. For instance, here, the packages could have been sent by a Utah resident while vacationing in Arizona.
 

 We recognize that innocent factors, when considered together, may give rise to reasonable suspicion.
 
 See
 

 United States v. Sokolow
 
 ,
 
 490 U.S. 1
 
 , 9,
 
 109 S.Ct. 1581
 
 ,
 
 104 L.Ed.2d 1
 
 (1989)
 

 *876
 
 . Courts have found reasonable suspicion on the basis of a number of innocent factors, including a suspicious return address. However, we are not aware of any case where a court has determined the existence of reasonable suspicion based
 
 solely
 
 on a suspicious return address. Rather, other additional factors have always factored in this calculus. These factors have included (1) the size and shape of the mailing; (2) whether the package is taped to seal all openings; (3) whether the mailing labels are handwritten; (4) whether the return address is fictitious; (5) unusual odors from the package; (6) whether the city of origin is a common "drug source" locale; and (7) whether there have been repeated mailings involving the same sender and addressee.
 
 United States v. Alexander
 
 ,
 
 540 F.3d 494
 
 , 501, 501 n.2 (6th Cir. 2008) (citations omitted).
 

 In the present case, the only suspicious factor found by the trial court was the Utah return address on the packages shipped from Arizona. The trial court made no finding that the informant or the police had any prior experience with Defendant. The trial court made no finding that Tucson, the city of origin, was a known "drug source" locale.
 
 See
 

 State v. Cooper
 
 ,
 
 163 Vt. 44
 
 , 47,
 
 652 A.2d 995
 
 , 997 (1994) (affirming trial court's finding of reasonable suspicion, in part, because Tucson is a known drug source locale). The trial court made no finding that the packages were sealed suspiciously, had a suspicious weight based on their size, had handwritten labels, or had a suspicious odor.
 

 Id.
 

 ;
 
 United States v. Lux
 
 ,
 
 905 F.2d 1379
 
 , 1380 n.1, 1382 (10th Cir. 1990) (finding that there was reasonable suspicion to detain defendant as the package fit part of the "drug package profile"). Therefore, we hold that the trial court's findings in this case are insufficient to support its conclusion that the police had reasonable suspicion to stop Defendant. As such, the retrieved drug evidence was inadmissible under the exclusionary rule.
 
 See
 

 McKinney
 
 ,
 
 361 N.C. at 58
 
 ,
 
 637 S.E.2d at 872
 
 . Because the drug evidence was inadmissible, we also find that Defendant's habitual felon conviction was erroneous.
 

 IV. Conclusion
 

 Because we hold that the trial court did not make sufficient findings to support its conclusion that the police had reasonable suspicion
 
 *459
 
 to detain Defendant, we reverse the order denying Defendant's motion to suppress, vacate the judgments, and remand for further proceedings consistent with this opinion.
 

 REVERSED.
 

 Judges BRYANT and STEPHENS concur.
 

 [1]
 

 The parties concede that Defendant was seized during his encounter with the police officer as the officer's conduct "would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."
 
 State v. Icard
 
 ,
 
 363 N.C. 303
 
 , 308,
 
 677 S.E.2d 822
 
 , 826 (2009) (internal quotation marks omitted).