**UNITED STATES of America, Plaintiff,**

**v.**

**James Arthur MARRIOTT, Defendant.**

**No. 86 CR 307.**

United States District Court, N.D. Illinois, E.D.

July 25, 1986.

Michael Mullen, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Michael B. Nash, Nash & Nash, Chicago, Ill., for defendant.

## AMENDED MEMORANDUM OPINION AND ORDER [1]

WILLIAM T. HART, District Judge.

On October 26, 1984, the government came across two invoices: one for the sale of a MAC–11 9mm silencer tube and another for the sale of one 9mm silencer parts set suitable for a MAC–11 pistol. Both invoices reflected James A. Marriott, 1030 North State, apt. 39A, Chicago, Illinois 60610, as the buyer and both were dated January 16, 1984. The two invoices were turned up during the course of a continuing investigation into the sale of firearms by several companies. On February 26, 1985, the government searched Marriott's apartment pursuant to a search warrant issued by a magistrate based on the affidavit of a special agent for the Bureau of Alcohol, Tobacco and Firearms ("ATF"). The search did not produce the MAC–11 parts, but did uncover parts allegedly suitable for converting certain firearms into machine guns, and Marriott's alleged possession of those parts is the basis of the indictment in this case. Marriott moves to suppress the evidence seized during the search on two grounds.

### I.

■ Marriott first challenges the validity of the search warrant on two grounds. In his reply brief he argues the invoice is insufficient to establish probable cause to believe that the parts described as sold to him were ever delivered to his apartment. However, the warrant affidavit stated that the invoices reflected a sale to "James A. Marriott, 1030 North State, Apt. 39A, Chicago, IL 60610." The magistrate could reasonably have concluded from the appearance of Marriott's address in the invoice that the parts ordered would be mailed there. If there was any doubt that the companies involved sent orders through the mail, the first 12 pages of the affidavit describe numerous sales to others (including undercover agents) and every time the mode of delivery is described it is by mail. And it goes without saying that mail service is reliable enough to make reasonable the belief that something sent through the mail actually arrived at the specified address. Therefore, reasonable cause existed to believe the MAC–11 parts arrived at (and therefore were in) Marriott's apartment shortly after January 24, 1984.

Marriott's more substantial challenge to the warrant is that it was based on fatally stale information. He argues that a 13-month-old invoice does not establish a "reasonable probability of finding the desired items" still in his apartment, *United States v. Hendrix*, 752 F.2d 1226, 1230 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985), and therefore the requisite contemporaneous probable cause was lacking.

Marriott argues that because the invoices apparently reflecting his purchase of the MAC–11 parts was at most "a mere isolated violation, it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time." *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir.1972).[2] However,

the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit. Together with the element of time [the court] must consider the nature of the unlawful activity. ... [The court must consider] all of the elements of probable cause, including the nature of the criminal activity, the length of the activity, and the nature of the property to be seized; probable cause, in turn,

---

1. The first day of trial defense counsel brought to this court's attention that the discussion in the July 23 opinion overlooked one of his arguments. After presentation and discussion of that argument, it was rejected by this court. This amended opinion is issued to keep the record straight and state this court's reasons for rejecting that additional argument.

2. The government cites and discusses *Johnson* as if it had been decided by the Seventh Circuit and, strangely enough, Marriott makes the same error.

should [be] contemplated in view of the practical considerations of everyday life. *Id.* In *Johnson,* the search was conducted to find non-taxpaid distilled spirits. Obviously that kind of item is not likely to remain in a person's possession for long, partly because it is typically resold to someone else and partly because it is designed to be consumed. The warrant was upheld on the theory that the affidavit supporting the warrant established "activity of a protracted and continuous nature", and therefore it was in line with "common sense" to assume that the same activities were still going on. *Id.* This same sort of theory is typically applied (or at least argued) in warrants to uncover illegal drugs, another item which, according to experience and common sense, is not in one person's possession for long. See, e.g., *United States v. Bascaro,* 742 F.2d 1335, 1345–46 (11th Cir.1984), *cert. denied, Hobson v. United States,* —— U.S. ——, 105 S.Ct. 3476, 3477, 3488, 87 L.Ed.2d 613, 622 (1985). But contrary to the government's argument that line of thinking has no application here. The two invoices dated the same day obviously are not evidence of continuing criminal activity and that is all the government had regarding Marriott.

Rejecting the continuing activity theory does not mean the warrant was invalid. Unlike illegal narcotics or distilled spirits, a gun silencer is not perishable and is not typically resold, at least by someone who apparently only bought one. Therefore, it is reasonable to assume that such things "remain as continuing articles." *Bastida v. Henderson,* 487 F.2d 860, 864 (5th Cir. 1973) (also involving a firearm). On the other hand, the passage of 13 months greatly increases the likelihood that whatever reason Marriott had for buying the silencer had disappeared in that time and he therefore got rid of it.

Which of these two possibilities is the "reasonable probability" is not easy to determine. In *Bastida,* the court held it was reasonable to believe that the guns used in a robbery would, 9 days later, still be in the apartment of one of the robbers. Closer in time to this case is *United States v. Rahn,* 511 F.2d 290 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975), in which the court upheld a search warrant to search for guns seized by ATF but then stolen by an ATF agent. In upholding the validity of the search the court stated:

> The affidavit clearly would give a magistrate probable cause to believe appellant had taken some of the weapons. Because of the unique facts of this case, we believe the affidavit also gave the magistrate probable cause to believe appellant still possessed the weapons in spite of the lapse of time [over 18 months] between the facts relied on and the warrant's issuance. [A witness's statement that he had seen appellant using a weapon just like one of those stolen] indicates appellant had appropriated at least one of the weapons for his personal use. This appropriation combined with the comment [his co-defendant] remembered that appellant believed the weapons would appreciate in value would give more than a suspicion appellant still possessed the weapons. The investigation [of pawn shops], although far from extensive, disclosed appellant apparently had not disposed of the weapons in the manner [his co-defendant, who had sold his to pawn brokers,] had utilized. Furthermore, the magistrate, employing the common sense interpretation of affidavits approach, may have recognized appellant's awareness, as an ATF agent, that in selling the guns he would be taking a real risk of detection. Consequently, we believe the affidavit provided circumstances from which it could be inferred that the probable cause clearly existing in the past continued to the time the affidavit was filed.

*Id.* at 293. Another helpful case is *United States v. McCall,* 740 F.2d 1331 (4th Cir. 1984), which involved the theft of a service revolver by a person who, over two years later, confessed to his friend McGriff (who was a police officer) and showed him the stolen gun. However, McGriff did not take action immediately and the search warrant was not obtained until 7 or 8 months later.

The court, in upholding the validity of the search, discussed numerous cases and then stated:

When, as here, however, the criminal activity alleged in the warrant is not ongoing in nature, nor the evidence sought intrinsically likely to remain at the location where it was originally observed, indicia external to the evidence itself should demonstrate that probable cause has not lapsed. ...

The magistrate here knew that the stolen service revolver could readily be identified as government property and therefore would be difficult to pawn or sell. He knew that [defendant] had not disposed of the weapon during the twenty-month interim between the robbery and his confession to McGriff. Presented with McGriff's statement that [defendant] had confessed to the robbery and had displayed the revolver only seven months earlier, the magistrate was justified in drawing the inference that [defendant] probably still possessed the incriminating evidence in [his] apartment.

Id. at 1337.

A case on the other side of the fence is *United States v. Campbell,* 732 F.2d 1017, 1020 (1st Cir.1984), in which the court held that no probable cause existed to search a defendant's apartment for firearms where the only fact to support the warrant for that search was that defendant was known to have carried a "25 automatic" some 29 months earlier.

■ This case falls in between the parameters established by the foregoing cases. Unlike *Campbell,* more than bare possession at some time in the past was presented to the magistrate. The affidavit also stated that in the affiant's experience, silencers are almost always bought for personal use and are kept in the buyer's residence for long periods of time. The first claim is consistent with common sense—buying one silencer from a source available to anyone does not suggest an intent to resell. The second claim was supported with evidence of other searches arising out of the same investigation in which items

had been recovered up to a year after sale. Of course this evidence was not nearly as compelling as the "indicia external to the evidence itself" present in *McCall* and *Rahn.* Nonetheless, the affidavit presented to the magistrate was much more than a "bare bones" affidavit, and in view of the "great deference" due the magistrate in determining the existence of probable cause, *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983), this court finds that the warrant was properly issued.

■ Even had this court found no probable cause, the evidence would still not be suppressed. In *United States v. Leon,* 468 U.S. 897, 926, 104 S.Ct. 3405, 3423, 82 L.Ed.2d 677 (1984), the Court held:

In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

Here, the only question is how much time can elapse before probable cause no longer existed. Drawing that line is difficult, reasonable persons could easily disagree over its exact placement, and wherever the line should be drawn it would not be much short of the 13 months involved here. Marriott does not contend the magistrate abandoned her neutral role, and thus in obtaining a warrant the agents did all they could to ensure the legality of their search. The affiant's statement of what was likely based on his experience further supports a finding of objective good faith. *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985). Even assuming, then, that 13 months is too long for probable cause to survive, the agents could have harbored an objectively reasoned belief in its existence and the evidence obtained falls within the good-faith exception to the exclusionary rule.

## II.

As already noted, the specific MAC–11 silencer parts named in the warrant were

not recovered in the search, but other parts (allegedly used in converting certain firearms to a machine gun) were. The government does not argue that the items seized fall within the scope of the warrant, which was limited to "materials relating to the purchase or possession of *silencers or their constituent parts*" (see copy of warrant attached as exhibit A to motion, emphasis added). Thus, seizure of those items was proper only if the "plain view" doctrine provided the necessary extension to the authority given by the warrant. See *Texas v. Brown*, 460 U.S. 730, 738–39 and n. 4, 103 S.Ct. 1535, 1541–42 and n. 4, 75 L.Ed.2d 502 (1983); *United States v. McDonald*, 723 F.2d 1288, 1294–95 (7th Cir. 1983), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984).

Marriott argues the plain view doctrine does not apply here because "the incriminating nature of the evidence was [not] immediately apparent." *United States v. Reed*, 726 F.2d 339, 343 (7th Cir. 1984). The way Marriott makes this argument is to rely on *United States v. Seven Miscellaneous Firearms*, 503 F.Supp. 565 (D.D.C.1980), which he interprets as holding that the very items seized in this case do not fall within the definition of the statute on which the government relies.[3] However, the plain view doctrine does not require it to be immediately apparent that the items seized will result in a *conviction*. Rather, the plain view doctrine applies if

the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States*, 267 U.S. 132, 162, [45 S.Ct. 280, 288, 69 L.Ed. 543] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. *Brinegar v. United States*, 338 U.S. 160, 176, [69 S.Ct. 1302, 1311, 93 L.Ed. 1879] (1949).

**3.** Other cases have disagreed with *Seven Miscellaneous Firearms*. See *United States v. Kelly*,

*Texas v. Brown*, supra, 460 U.S. at 742, 103 S.Ct. at 1543. That standard was satisfied here.

IT IS THEREFORE ORDERED that defendant's motion to suppress is denied.

548 F.Supp. 1130, 1132–34 (E.D.Pa.1982), and cases cited therein.