## State of Vermont v. Anthony Emmi

[628 A.2d 939]

No. 92-077

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 18, 1993

378

*Thomas M. Kelly*, State's Attorneys & Sheriffs Department, Montpelier, for Plaintiff-Appellee.

*William C. Kittell*, Burlington, for Defendant-Appellant.

**Johnson, J.** Defendant was convicted in a jury trial of felony possession of marijuana under 18 V.S.A. § 4230(a)(3), and appeals from the trial court's denial of his motions (1) to quash the search warrant as the product of an unconstitutional search, and (2) to compel the State to produce the confidential informant. We affirm.

At some point during the seventy-two hours before March 7, 1991, a police informant entered defendant's home wearing an electronic audio transmitter, for which the police had not obtained a warrant. He observed a "brick" of marijuana and a large amount of cash, and believed there was additional marijuana in a safe. Through the transmitter worn by the informant, the police were able to hear a conversation between the informant and defendant, and the informant later gave the police additional information based on his observations.

On March 7, 1991, the state police obtained a warrant to search defendant's home, supported by the affidavit of officer William Sheets, which in turn was based on information obtained from the confidential informant's electronic transmissions and his subsequent personal statements.[1] Armed with the warrant, the police then searched defendant's apartment,

---

[1] The affidavit stated in part:

5. Within the past 72 hours, the cooperating individual entered the residence in question, fitted with an electronic audio transmitter. The State Police searched the person of the CI [confidential informant] prior to him/her entering the residence, and found them to be free of drugs and contraband. . . . The CI was observed to enter the residence in question by this officer. Once inside the residence a conversation could be heard on the audio transmitter between the CI and a male identified by the CI as being Anthony J. "Tony" Emmi. During this conversation Emmi was heard to advise the CI that he would sell him one pound of marijuana for $2250.00 . . . The CI was observed to exit the residence by this officer and this officer met with the CI shortly thereafter.

6. The CI advised that while in the residence, he/she observed a one pound "brick" of marijuana that was packaged in a large clear plastic ziplock bag. The CI advised that he observed what appeared to be a large amount of money in a safe located in a first floor bedroom. The CI believes that additional marijuana is located there. The CI advised that he/she observed several baggies of marijuana in this room. . . .

7. The CI has entered the Emmi residence on two previous occasions in the past under Vermont State Police supervision. On one occasion a quantity of marijuana was obtained from Anthony Emmi. . . .

where they seized approximately three pounds of marijuana from defendant's safe, and over $1,000 in cash, scales, records, and other items. The informant was not present during the search nor was he called as a witness at trial.

Defendant was charged with felony possession of marijuana. He moved for production of the electronic monitoring tapes and for suppression of the evidence seized during the search, asserting that the recorded statements were taped illegally, without judicial authorization, and could therefore not be used to form probable cause. At the hearing on the motion, defendant's counsel explained:

> I feel that the Court should examine the legitimacy of the electronic surveillance and if it decides that electronic surveillance should not be done in the home without warranting or without a search warrant, to then read the affidavit for the search warrant, excising any reference to electronic transmissions.

The motions were denied, the jury found defendant guilty, and the present appeal followed.

## I.

Defendant makes two attacks on the validity of the search warrant. First, he argues that the search warrant was invalid because the information on which it was based was obtained by an informant employing warrantless electronic monitoring equipment, and because the use of electronic monitoring without a warrant tainted any direct observations made by the informant while illegally wired. This argument was not offered at trial and will not be considered for the first time on appeal, absent plain error. *State v. Ringler*, 153 Vt. 375, 379, 571 A.2d 668, 670 (1989). Second, defendant contends that even if this Court considers the validity of the search warrant only on the basis of the informant's direct sight and sound observations, there was no probable cause for the warrant because the reliability of the confidential informant was not established prior to issuance.

Under V.R.Cr.P. 41(c), a finding of probable cause sufficient for issuance of a warrant may be based on hearsay as long as "there is a substantial basis for believing the source of the hear-

say to be credible and for believing that there is a factual basis for the information furnished." V.R.Cr.P. 41(c). In *State v. Ballou*, 148 Vt. 427, 433, 535 A.2d 1280, 1283 (1987), we noted that Rule 41(c)'s standard for issuing warrants based on hearsay adopts the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 110–16 (1964), and *Spinelli v. United States*, 393 U.S. 410, 415–19 (1969). We explained in *Ballou*:

> Where part or all of the information provided to the judicial officer comes from confidential informants, V.R.Cr.P. 41(c) requires the information to meet a two-prong test set forth in the *Aguilar* and *Spinelli* decisions. The test addresses two concerns: (1) that the judicial officer rather than the law enforcement officers makes the determination from the underlying facts that probable cause is present; and (2) that the information on which the determination is based is reliable.

148 Vt. at 434, 535 A.2d at 1284 (citations omitted).

Defendant attacks the trial court's ruling that the informant could be deemed reliable because, while monitored by the state police, he had twice before entered defendant's residence, and had obtained marijuana on one of those occasions. If we understand defendant's argument, he is suggesting that the earlier entries were illegal and that probable cause had been improperly established on the basis of prior illegal conduct.

Affidavits supporting the issuance of a search warrant "'must be viewed in a common sense manner and not be subjected to hypertechnical scrutiny.'" *State v. Weiss*, 155 Vt. 558, 562, 587 A.2d 73, 75 (1990) (quoting *Ballou*, 148 Vt. at 434, 535 A.2d at 1284). The totality of the circumstances must be examined to determine whether substantial evidence supports the warrant. *Id.* at 562, 587 A.2d at 75. Here, viewing the totality of the circumstances, we cannot conclude that the informant's prior entries were illegal. Defendant does not allege, and the record does not indicate, that defendant's acts might have tainted these visits, nor does he contend that the police supervision of the prior entries was deficient, casting possible doubt on the source of the marijuana allegedly purchased during one of these visits. What defendant does allege is that the informant was "an extension of police presence . . . [and] a situation that is tantamount to robot control."

■ The State does not deny that the informant acted as its agent. Rather, the State responds to the argument by asserting that the purchase was not tainted because the only impermissible conduct identified in the course of any of the informant's entries was the use of a body wire, and that the information conveyed electronically was not taken into consideration by the trial court. This is consistent with Vermont law, and thus we find no reversible error. See *State v. Blow*, 157 Vt. 513, 518–20, 602 A.2d 552, 555–56 (1991) (warrantless electronic monitoring conducted in a home violates Article 11 of Vermont Constitution and conviction will stand only if not dependant on suppressed evidence).

■ Moreover, even if the earlier entries did not shed light on the informant's credibility, we must determine, as we stated in *Ballou*, whether "the information on which the determination is based is reliable." 148 Vt. at 434, 535 A.2d at 1284. Rather than strict reliance on the informant's credibility, the gathered evidence from a controlled drug purchase may be used to establish the reliability of the information received. This approach distinguishes personal credibility of the informant from informational reliability gleaned from physical evidence or police observation. See *Hignut v. State*, 303 A.2d 173, 179–80 (Md. Ct. Spec. App. 1973); *Commonwealth v. Benlien*, 544 N.E.2d 865, 867–68 (Mass. App. Ct. 1989); *State v. Wilson*, 733 P.2d 54, 58 (Or. Ct. App. 1987). As the court stated in *Hignut*:

> Although the narrative language [of the affidavit] is again trimmed to the bone, its clear import is that the affiants . . . searched the informant and found him "clean," and sent him into the suspect premises, whence he came out "dirty." This is the typical "controlled buy" investigative technique. So long as the controls are adequate, the "controlled buy" alone may well establish probable cause to search a suspect premises . . . .

303 A.2d at 180 (footnotes omitted).

Police control of the drug purchase provides the basis for the police to conclude that the informant has, in fact, obtained drugs from the claimed source and not from some other source, in contrast to an informant who simply appears with an illegal

substance and makes unverifiable statements as to the source of the substance. Additionally, the fruits of the controlled purchase and the supervision by the police of the purchase help assure that the judicial officer to whom application for the warrant is made "has information from which to make an independent determination of an informant's basis of knowledge and veracity." *State v. Bruyette*, 158 Vt. 21, 33, 604 A.2d 1270, 1276 (1992).

■ Here, defendant has offered no specific objections to the manner in which the police supervised the prior entries to the defendant's home by the informant. The application for the warrant was closely preceded by a supervised entry of defendant's home by the same informant who had previously executed a controlled buy in the same premises. Having thus obtained marijuana from defendant's apartment under the tightly controlled circumstances described in the affidavit, the credibility of the informant was buttressed by proof that the information he supplied was reliable, and the judicial officer could independently conclude that there was an adequate basis for the warrant.[2]

## II.

■ Defendant next argues that the court erred in not revealing the identity of the confidential informant. Our rules of evidence give the State a "privilege to refuse to disclose the identity of a person who has furnished information relating to . . . an investigation of a possible violation of a law to a law enforcement officer . . . ." V.R.E. 509(a). There is an exception, however, where "it appears in the case that an informant may

---

[2] Defendant also argues that the State was required to produce the transcripts of the electronically transmitted information in order for defendant to review the credibility of the informant and the veracity of his observations. Defendant contends that it would "serve justice" to review the tape. Making the tapes available to defendant, however, would not only reveal the identity of the informant, but would run counter to our determination that the informant was reliable independent of the suppressed electronically gathered information. Furthermore, the court did in fact conduct an in camera review of the recording of the transmitted information to determine if there was evidence of entrapment, of which it found none.

be able to give testimony relevant to any issue in a criminal case." V.R.E. 509(c)(2). "Any issue" includes more than the question of guilt or innocence, but also covers the validity of the search warrant itself. *State v. Veburst*, 156 Vt. 133, 140, 589 Vt. 863, 867–68 (1991).

■ Defendant points out that this case falls within the scope of the exception because here the confidential informant was the source of information that led the police officers to search defendant's bedroom, where the investigating officers "located a large amount of alleged marijuana." Because the informant is the source of the probable cause affidavit, defendant argues, his identity should be revealed. Under the reasoning of *Veburst*, we do not agree that the identity must be disclosed. First, the credibility of the informant or the reliability of the information is the central issue for the magistrate in the issuance of a probable cause warrant. Simply because information obtained by the informant provided the basis for the police search does not mean that the identity must be revealed, absent a sufficient showing by defendant. As we stated in *Veburst*, "[i]f this showing were sufficient to compel disclosure of the identity of an informant or to compel an in camera hearing, trial courts would be required to employ these procedures in virtually all cases involving informants." 156 Vt. at 143, 589 A.2d at 869. Second, there was no trial issue that required the informant's testimony. The informant was not present during the search executed under the warrant. And, unlike the appellant in *Veburst*, defendant did not develop any theory under which the informant's testimony might have demonstrated potential misconduct by the police during the search. Consequently, the court was correct in denying defendant's motion to disclose the identity of the informant.

*Affirmed.*