## State of Vermont v. Michael J. Demers

[707 A.2d 276]

No. 96-452

Present: **Amestoy, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 26, 1997

*Robert Butterfield*, Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Robert P. Keiner* of *Keiner & Dumont, P.C.*, Middlebury, for Defendant-Appellant.

**Amestoy, C.J.** Defendant appeals the Caledonia District Court's denial of his motion to suppress evidence of marijuana found when officers searched a freezer in his home pursuant to a warrant issued on suspicion that defendant had illegally shot a deer. Defendant contends there was insufficient probable cause to issue the deer meat warrant because (1) the game warden's affidavit did not contain sufficient information to find probable cause, (2) the affidavit contained factual inaccuracies and omissions that misled the judge, and (3) the six-month time delay from the alleged deer jacking to issuance of the search warrant made the affidavit's information too stale to support probable cause. We affirm.

On the evening of November 15, 1994, in the town of Hardwick, officers with the Vermont Fish and Wildlife Department received a report of weapons fired in an area known for illegal deer hunting. Approximately twenty minutes after the report, in the immediate vicinity of the suspected shooting, a warden observed defendant's car being driven without headlights illuminated. The warden stopped the car, spoke with defendant, and observed a fresh semicircular cut above defendant's eye, which the warden believed came from the scope of a recoiling gun. Defendant, a resident of the area, explained that he and his two passengers were driving without headlights because they believed suspicious activity was taking place in the vicinity. He explained that the cut above his eye was from clearing bushes. The warden requested and received defendant's permission to search the vehicle. Although he did not find a deer carcass or weapons in defendant's vehicle, the warden found in the trunk fresh deer blood and hair, samples of which he took for DNA testing.

The next day, in searching the field where the suspected shooting had occurred, a game warden discovered the distinct marks of a deer dragged from the field to the road. The warden observed tire tracks at the end of the drag marks. Taking samples of deer blood and hair from the marks, the warden then proceeded to defendant's home, where he discovered and took similar samples of marks from a deer dragged across defendant's front yard. The warden observed that the tire marks on the road were similar to the pattern on defendant's car tires.

Approximately four weeks after the suspected deer jacking, a game warden sent the deer hair and blood samples to an out-of-state wildlife forensics laboratory for DNA analysis. The warden testified

later that the delay in sending out the samples was attributable to the high volume of activity surrounding hunting season in Vermont.

Test results from the forensics laboratory came back on May 8, 1995, and indicated that the same deer had been the source of the samples taken at the scene of the alleged deer jacking and those taken from drag marks in defendant's yard. The results showed, however, that the deer blood and hair found in defendant's car trunk had come from a different deer.

The game warden then prepared an affidavit to support a warrant to search defendant's home for evidence of the illegally-taken deer. The judge issued the warrant on May 18, 1995, six months after the suspected deer jacking.

In the course of searching defendant's home on May 21, 1995, wardens discovered marijuana in defendant's home freezer. Pursuant to a second search warrant based on that discovery, police officers discovered substantial quantities of marijuana in a trailer located on defendant's property. After the district court denied defendant's motion to suppress the marijuana evidence found as a result of the searches, defendant entered a conditional plea of nolo contendere to felony charges of marijuana possession and cultivation.

Defendant's central argument on appeal is that the district court erred in not suppressing the marijuana evidence found pursuant to the May 18, 1995 deer meat search warrant and subsequent searches. Defendant advances three principal reasons why probable cause to issue the search warrant did not exist: (1) the warden's affidavit supporting the search warrant did not allege sufficient facts to find probable cause that defendant had illegally shot a deer; (2) even if the affidavit set forth sufficient information, it contained false information and omissions that misled the issuing judge to find probable cause; and (3) the six-month time lapse between the alleged deer jacking and the warrant's issuance made the information supporting the warrant stale.

■■ A search warrant may be issued only upon a finding by a judicial officer of probable cause that a crime was committed and that evidence of the crime will be found at the place to be searched. V.R.Cr.P. 41(c). In determining whether probable cause to issue the warrant exists, the "key inquiry is 'whether the information provided in the affidavit reveals circumstances from which a person of reasonable caution would conclude that a crime has been committed and that evidence of the crime will be found in the place to be searched.'" *State v. Cooper*, 163 Vt. 44, 51, 652 A.2d 995, 999 (1994) (quoting *State v.*

*Platt*, 154 Vt. 179, 185, 574 A.2d 789, 793 (1990)). We will give great deference to a judicial officer's determination of probable cause, and not undertake "hypertechnical scrutiny" of supporting affidavits. *State v. Ballou*, 148 Vt. 427, 434, 535 A.2d 1280, 1284 (1987).

■ We do not agree with defendant's contention that the affidavit on its face did not support a finding of probable cause that defendant committed a crime. The affidavit indicated that defendant was observed driving at night with no headlights in the immediate vicinity of where a gun shot had recently been heard, and that he had a fresh cut, apparently from a rifle scope, above his eye. A game warden found evidence of a killed deer in the field where the shots were heard, but found no evidence that the deer had been field dressed, a scenario described by the warden as consistent with an illegally-taken deer. DNA tests established a match between the deer killed in the field and the one dragged across defendant's yard within a day of the suspected deer jacking. We conclude that a common sense reading of the affidavit supports a finding of probable cause that defendant had illegally shot a deer.

Defendant next argues that, even if the affidavit supports a finding of probable cause, the game warden omitted exculpatory information and provided erroneous information in his affidavit. As a result, according to defendant, the court received a distorted view of the facts and improperly found probable cause. Defendant contends that the warden omitted several key facts from the affidavit: (1) that samples of deer blood and hair taken from defendant's car trunk did not match samples taken from the field and from defendant's yard, (2) that two other men were in the car with defendant when he was stopped by the warden, (3) that the warden found no firearms or flashlights in defendant's car, and (4) that defendant had supplied explanations for his driving without headlights and for the cut over his eye. Defendant also asserts that the warden falsely stated in the affidavit that Vermont Fish and Wildlife records did not reveal defendant's report of a legally taken deer after November 15, 1994.

■ In order to challenge a probable cause finding on grounds that the supporting affidavit contains false information or omissions, defendant must establish by a preponderance of the evidence that the government agent who produced the affidavit made the false statements or omissions intentionally, knowingly, or with reckless disregard for the truth. *United States v. Mankani*, 738 F.2d 538, 545 (2d Cir. 1984); *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). If

defendant satisfies this initial burden, the reviewing court, in order to determine whether probable cause was established, will consider the supporting affidavit as though the omitted information had been supplied and as though accurate, rather than inaccurate, information had been included. See *Mankani*, 738 F.2d at 545; *Franks*, 438 U.S. at 156. Reviewing issuance of the May 18, 1995 search warrant, the Caledonia District Court heard argument and testimony about the warden's preparation of the affidavit. The court found that, while the warden had been negligent in his preparation of the affidavit, he had not acted with any intent to deceive or with reckless disregard for the truth. See *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (inaccurate facts or omissions in supporting affidavit, if made negligently, do not satisfy *Franks* requirement of intentional or reckless behavior). We find nothing in defendant's argument on appeal to persuade us that the district court was clearly erroneous in its finding, and accordingly, we will not disturb its ruling.

Moreover, we agree with the district court that the omitted and purportedly erroneous information in the affidavit did not influence the finding of probable cause. First, the fact that samples from defendant's car did not match those from the field and from defendant's driveway was not relevant to probable cause. The central fact supporting probable cause was the match between samples from the field and defendant's driveway, and the fact that a different deer had been in defendant's car did not alter the conclusion reasonably drawn from the evidence. Similarly, the existence of two other men in defendant's car and the absence of weapons and flashlights in the car would not have bolstered a finding of probable cause, but neither would those facts have undermined the other evidence supporting probable cause. Inclusion of defendant's explanation for the cut above his eye would have similarly added detail to the report, but would have been of little import in the probable cause calculus. Lastly, even if the affidavit had indicated that defendant reported a legally taken deer on November 28, 1994, the suspicion that defendant illegally shot a *different* deer on November 15 would still have been entirely reasonable. See *State v. Breest*, 367 A.2d 1320, 1329 (N.H. 1976) (mere possibility that undisclosed information might have helped defendant did not create requirement that it be disclosed in affidavit for search warrant).

Defendant next argues that the trial court erred in finding probable cause because the information in the affidavit was stale. He contends that a person of reasonable caution would not have concluded that the

contraband deer meat was likely to have been found in defendant's home six months after the alleged illegal taking of the deer.

■ A valid search warrant must be based upon probable cause that items sought will actually be at the place sought to be searched at the time of the search. See *Sgro v. United States*, 287 U.S. 206, 210 (1932). Clearly, that probability can be lessened by the passage of time. See *State v. Driscoll*, 137 Vt. 89, 97, 400 A.2d 971, 976 (1979). Determining the timeliness of information, however, is not accomplished by merely counting the days that have elapsed between the facts relied on and the issuance of the warrant. See *State v. Towne*, 158 Vt. 607, 615, 615 A.2d 484, 488-89 (1992) (totality of circumstances must be examined to determine if probable cause exists to issue warrant); *State v. Maguire*, 146 Vt. 49, 55, 498 A.2d 1028, 1031-32 (1985) (same); *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (no bright line test exists to determine staleness); *Sgro*, 287 U.S. at 210-11 (whether information is too stale to support finding of probable cause is determined by circumstances of each case).

Whether information is too stale to establish probable cause depends on an assessment of the totality of the circumstances, with consideration given to the nature of the criminal activity, the duration of that activity, the nature of the property to be seized, and the nature of the location to be searched. See *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990) (timeliness depends on nature of criminal activity, length of activity, and nature of property to be seized); *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988) (mere passage of substantial amount of time is not controlling); *Andresen v. State*, 331 A.2d 78, 106 (Md. Ct. Spec. App. 1975) (considerations for timeliness of search include character of crime, criminal, thing to be seized, and place to be searched).

■ In this case, the totality of the circumstances supports the reasonableness of the court's conclusion that some of the contraband deer meat would likely be found at defendant's home when the warrant issued. First, the affidavit contained credible representations by an experienced game warden that illegally taken deer are usually transported to a residence, processed, stored in a home freezer, and consumed over a period of six to twelve months. See *United States v. Marriott*, 638 F. Supp. 333, 336 (N.D. Ill. 1986), *aff'd*, 826 F.2d 1067 (7th Cir. 1987) (thirteen-month-old invoice not stale information where officer said that in his personal experience items in invoice would remain at person's residence for long period of time). Second,

common sense bolsters the court's finding. Daily life frequently involves freezing quantities of perishable food too abundant for consumption within a short time-frame. Once frozen, food can remain usable for months and even years into the future. See *Langle v. Bingham*, 447 F. Supp. 934, 937 (D. Vt. 1978) (game wardens seized sixty pounds of frozen deer meat; defendant intended to consume meat over ensuing months). Also, the likelihood that evidence is not destroyed over the passage of time is further strengthened where defendant exercises control over the place to be searched. See *Towne*, 158 Vt. at 616, 615 A.2d at 489 (presence of evidence sought is more likely if place to be searched "is one over which defendant exercises control"). Unlike, for example, illegal weapons or illegal drugs, which are incriminating in and of themselves, deer meat is not incriminating per se. Where the evidence sought is innocuous, the passage of time does not diminish the likelihood that it will be found at a given location as much as it would if the items sought were incriminating.* See *State v. Carbone*, 374 A.2d 215, 221 (Conn. 1977) (where item sought is innocuous, probable cause not reduced as much by passage of time); *United States v. Baker*, 888 F. Supp. 1521, 1527 (D. Haw. 1995) (eighteen month-old information about clothing to be searched for not stale because clothing itself not incriminating).

*Affirmed.*

---

*Defendant argues that it was unreasonable for the trial court to conclude that the incriminating evidence would be at defendant's home, because defendant had known for six months that he was under suspicion for illegally taking a deer. This amounts to a claim that a search warrant can be invalidated by asserting that no reasonable criminal would leave incriminating evidence to be seized, once he knew he was suspected of a crime. While such a proposition may be consistent with logic, it is inconsistent with experience and without legal support. Moreover, the most plausible explanation of why a risk in retaining the meat of an illegally seized deer was not foreseen may be in defendant's succinct response to the game warden's warning that DNA testing could be done on deer meat: "That's a bunch of crap, too."