## STATE of Vermont v. Carter DEFRANCEAUX

[743 A.2d 1074]

No. 98-210

October 28, 1999. Defendant appeals from a conviction for possession of marijuana, pursuant to a conditional plea under which he may appeal the denial of a motion to suppress certain evidence gathered pursuant to a search warrant. We affirm.

The facts are not in dispute. On June 12, 1995, an employee of Mail Boxes, Etc., in Tucson, Arizona, contacted the local police narcotics squad to investigate two suspicious packages to be delivered to Vermont. The packages were opened pursuant to a policy of Mail Boxes, Etc. A Tucson officer responded and took the packages. Believing them to contain contraband, the officer contacted police in Vermont and eventually communicated with the Vermont State Police. The officer told the trooper that each package contained a white, five-gallon, plastic bucket in which there was a large bundle of marijuana wrapped in duct tape, and that the total weight of the marijuana was about twenty pounds. The officer also indicated that the return address was fictitious and that the listed sender was "T-SHIRT DESIGN AND COLOR," a business that could not be located by Tucson directory assistance. The listed contents of the package were t-shirts and

dye. The officer took a sample of the marijuana and photographed the packages before sending them to Vermont.

The addressee of the packages was Jason Marshall of RD#3, Box 83A, St. Johnsbury, Vermont. The trooper investigated but could not find a mailbox identified as 83A. The packages arrived at the state police barracks on June 14, and troopers, posing as UPS carriers, attempted a delivery on June 15. By that time, a formerly unmarked mailbox was marked as Box 83A, and the troopers delivered to the house corresponding to the mailbox. When the troopers knocked, defendant answered and indicated he would sign for Jason Marshall, who was not there at the time. The troopers noted that defendant was "very nervous" but appeared glad to receive the packages.

The troopers left a surveillance team on the road from the house and drove away. Shortly thereafter, the surveillance team indicated that a truck was leaving the house. Troopers stopped the truck, which contained defendant and one other person, and returned with it to the house. Meanwhile, the delivery troopers returned to the house and entered it, determining that the packages were within the house, unopened.

Based on the above information, the investigating trooper obtained a search warrant for the house and the truck. Marijuana, in addition to that shipped, was found in the house and in the truck. Defendant moved to suppress the fruits of the search on four main theories: (1) the affidavit in support of the warrant application was insufficient to establish probable cause because it did not show how the substance in the package was identified as marijuana; (2) the affidavit was based on information gathered in the initial, unwarranted search of the house by the delivery troopers, and that search was unlawful; (3) the description of items to be searched for was overbroad; and (4) the search warrant did not authorize a

search for the marijuana delivered to the house or for other contraband. The district court rejected each of these contentions, and defendant renews them on appeal.

The standard for probable cause for a search is whether "a person of reasonable caution would conclude that a crime has been committed and that evidence of the crime will be found in the place to be searched." *State v. Platt*, 154 Vt. 179, 185, 574 A.2d 789, 793 (1990). Affidavits in support of probable cause "must be viewed in a common sense manner and not be subject to hypertechnical scrutiny." *State v. Ballou*, 148 Vt. 427, 434, 535 A.2d 1280, 1284 (1987). In determining whether probable cause is present, we must examine the totality of the circumstances. See *State v. Emmi*, 160 Vt. 377, 381, 628 A.2d 939, 942 (1993). The magistrate's determination of probable cause is entitled to great deference, and we review to ensure that the magistrate had a substantial basis for concluding that probable cause existed. See *State v. Maguire*, 146 Vt. 49, 53, 498 A.2d 1028, 1030-31 (1985).

Defendant's first challenge focuses exclusively on the identification in Arizona of the content of the packages as marijuana. Defendant argues that the affidavit is deficient because it fails to specify who identified the contents as marijuana and how that determination was made. Viewing the affidavit in a common sense manner, as we must, we think it fairly conveys that the identification was made by the officer of the Tucson Narcotics Trafficking Interdiction Squad. We agree with defendant, however, that although we can rely on the "experience and training of an officer" to make such an identification, *State v. Pierce*, 463 A.2d 977, 981 (N.J. Super. Ct. 1983), the affidavit is deficient in failing to specify what skill, experience or training the Tucson officer possessed. See *State v. Matlock*, 616 P.2d 684, 687 (Wash. Ct. App. 1980). If the identification were the only evidence to support the

probable cause determination, we would have to reverse the denial of the motion to suppress.

We must, however, rely on the totality of the circumstances to determine whether there was substantial evidence. See *Emmi*, 160 Vt. at 381, 628 A.2d at 942. Here, there is additional evidence to support the probable cause determination. The packages came from a false address and an apparently false sender. The sender misstated the contents. Defendant's mailbox was marked for delivery only on the day of delivery. The person to whom the packages were addressed was not at the delivery address. Although defendant accepted the packages, he later said the addressee had not been present at the address for five months. Defendant was "very nervous" while accepting the packages. We conclude that all of the information in the affidavit was sufficient for the magistrate to determine that the crime of possession of marijuana had been committed and evidence of that crime was in the house.

Second, defendant challenges the search warrant because the supporting affidavit included information obtained during the warrantless search of the house. Defendant argues that because the warrantless search was unlawful, the affidavit is defective and cannot support a finding of probable cause.

The only information derived from the warrantless search of the house was that the delivered marijuana boxes were stacked on the floor unopened in the living room area. Assuming this search was unlawful, it does not necessarily invalidate the search warrant. Where a search warrant affidavit contains information from illegally-obtained evidence, as well as information obtained from independent and lawful sources, a valid search warrant may issue if the lawfully-obtained information is sufficient to establish probable cause. See *State v. Morris*, 165 Vt. 111, 128-29, 680 A.2d 90, 102

(1996). In this case, the information obtained from the warrantless search added little, if anything, to the other information in the affidavit, especially because the warrant covered both the house and the car, and the delivered contraband had to be in one of those places. We conclude that even if the warrantless house search was unlawful, the affidavit established probable cause without the fruits of that search, and the warrant was therefore valid.

Third, defendant argues that the warrant was overbroad because it authorized a general search for items unconnected to the contraband. The affidavit indicated that the quantity of marijuana involved was worth over $40,000 at street value and was an amount associated with drug sales, not casual use. It further indicated that based on the trooper-affiant's experience as an investigator of complex crimes, drug sellers would have records of the sales operation, cash or negotiable instruments, names and addresses of purchasers, photographs, and expensive possessions and would secrete such property in their residence. On this basis, the warrant broadly authorized a search for the above types of property. The warrant had to identify "the property or other object of the search and naming or describing the person or place to be searched," V.R.Cr.P. 41(c), and this warrant met the requirements of the rule. There must be a sufficient nexus between the items to be seized and the alleged criminal behavior so that it is shown that the evidence sought "will aid in a particular apprehension or conviction." *Warden v. Hayden*, 387 U.S. 294, 307 (1967). In light of the affidavit in this case, the items specified in the warrant met that standard, and the warrant was valid.

Finally, defendant argues that the warrant did not authorize the officers to seize the contraband that came from Arizona, or other contraband. In fact, the warrant authorized the officers to search for and seize the two shipping boxes addressed to Jason Marshall at the delivery address. As to other contraband, the officers could seize an article of incriminating character that was in plain view in the course of their lawful search. See *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). Defendant makes no claim that the additional marijuana found in the search was not in plain view under *Coolidge*. Thus, there was no error in failing to suppress it.

*Affirmed.*