# State of Vermont v. Lois Melchior

[775 A.2d 901]

No. 00-192

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 11, 2001

*John T. Quinn*, Addison County State's Attorney, Middlebury, for Plaintiff-Appellee.

*Benjamin H. Deppman* and *Ebenezer Punderson* of *Deppman & Foley, P.C.*, Middlebury, for Defendant-Appellant.

**Morse, J.** Defendant Lois Melchior appeals the judgment of the Addison District Court denying her motion to suppress evidence procured pursuant to a warrant which was issued based in part on observations made by police from a helicopter flying over her property. Melchior argues that the affidavit submitted in support of the warrant application was insufficient to support a finding of probable cause once portions of it were excised as was done by the trial court. We affirm.

On September 9, 1999, police officers Don Sweet and Chris Campbell flew in a helicopter searching for marijuana cultivation as part of the Marijuana Eradication Team (MERT) program. National

Guardsman James Valley was piloting the helicopter and was accompanied by another guardsman. As part of the MERT program, officers perform flyovers of particular areas of the state in an effort to detect marijuana growth. If officers detect marijuana growth, they engage in eradication efforts which include visiting sites on the ground and pulling plants. There may be further follow-up, including pursuing charges against individuals that can be linked to the marijuana sites.

James Valley flew the officers over the area of Melchior's property because he thought he had observed marijuana growth there as he was on his way to pick up the officers at the Middlebury Airport. According to the officers, the aircraft was over the property for between one and five minutes at a height of roughly 525 to 650 feet. Following their observations, they returned to the Middlebury Airport to follow up with eradication efforts, including paying a visit to Melchior's property.

The group pulled onto a neighboring property in order to observe the Melchior property. The entrance to the access road, however, was marked with a sign indicating the land was posted and forbidding trespassing for any reason. After observing the same marijuana plants from the ground, the officers knocked on the doors of the residences located on the Melchior property, but received no response. Trooper Campbell then applied for and was granted a warrant to search the property. Melchior was subsequently charged with possession and cultivation of marijuana.

Melchior moved to suppress the evidence on a number of theories. Ultimately, the trial court denied the motion, determining that the information acquired in the course of the aerial observation contained in the warrant application was sufficient alone to support a finding of probable cause. In so doing, the court disregarded the additional information in the affidavit regarding Trooper Campbell's observations from the ground. After entering a conditional plea of guilty, Melchior appealed to this Court.

The State does not contest the trial court's limited consideration of the information in the warrant application, namely that garnered from Trooper Campbell's aerial observations. We are therefore presented with the simple question of the whether the statements in Trooper Campbell's affidavit regarding his training and experience, taken in conjunction with his statements regarding his observations of the Melchior property from the air, support a determination of probable cause. Specifically, he states in his affidavit with regard to his aerial observations:

> On 09-09-99 I was engaged in a MERT flyover in Addison
> County. . . . The purpose of this flight was the detection of
> Marijuana plants. In the area of Vt. Rt. 116 in the town of
> Bristol north of the Middlebury town line I observed *a stand
> of plants consistent in color, shape and texture with
> Marijuana plants.* Upon closer examination from the air it
> was determined that the plants were *situated within a
> vegetable garden* on the property of what was later identified
> as the [Lois Melchior] property.

(Emphasis added.)

Melchior argues that the statement that Trooper Campbell observed plants "consistent in color, shape and texture" with marijuana plants is insufficient and that, absent a statement that Trooper Campbell affirmatively believed the plants to be marijuana, the trial court could not have concluded that the affidavit supported a finding of probable cause.[1] We have cautioned against hypertechnical scrutiny of the language in an affidavit, however, and have instead encouraged a common sense reading when making determinations of probable cause. *State v. Demers,* 167 Vt. 349, 353, 707 A.2d 276, 278 (1997).

█ Furthermore, when considering statements in an affidavit made in support of a warrant application, the question is not whether the *officer* making out the affidavit *subjectively* inferred from the facts included the presence of criminal activity. Rather, the question is whether a magistrate *objectively* may infer from the facts in the affidavit that "a crime has been committed and that evidence of the crime will be found in the place to be searched." *State v. Zele,* 168 Vt. 154, 157, 716 A.2d 833, 835-36 (1998). Courts have in fact criticized conclusory statements in affidavits and have instead demanded that specific details be included to support such conclusions, so that a magistrate can make an independent determination of probable cause. See, e.g., *Illinois v. Gates,* 462 U.S. 213, 239 (1983) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of

---

[1] Melchior also argues that the trial court impermissibly relied on a finding that both officers agreed that what they observed from the air was marijuana when making its determination of probable cause. It is clear from the opinion, however, that the trial court made this finding of fact as background·information and in no way relied upon it in its *legal analysis* regarding whether Trooper Campbell's *affidavit* supported a finding of probable cause.

the bare conclusions of others."); *United States v. Settegast*, 755 F.2d 1117, 1121 (5th Cir. 1985) ("a wholly conclusory statement unsubstantiated by underlying facts is not sufficient to support a determination of probable cause"); *State v. Howe*, 136 Vt. 53, 61, 386 A.2d 1125, 1130 (1978) ("[A]n affidavit, in order to enable the magistrate reviewing the request for the warrant to make an *independent* determination of the existence of probable cause, must set out *underlying facts* so that the magistrate can weigh the reasonableness of the conclusions drawn.") (emphasis added). In this case, the affidavit included the *details* which led the officer to apply for a warrant, i.e., his observation of plants, "situated within a vegetable garden," consistent in "color, shape and texture" with marijuana, without including the explicit conclusion, i.e., that the plant he observed was in all likelihood marijuana.

We also note that the standard for a finding of probable cause, "whether 'a person of reasonable caution would conclude that a crime has been committed and that evidence of the crime will be found in the place to be searched,' " *State v. Defranceaux*, 170 Vt. 561, 562, 743 A.2d 1074, 1075 (1999) (mem.) (quoting *State v. Platt*, 154 Vt. 179, 185, 574 A.2d 789, 793 (1990)), requires something *less* than the more-likely-than-not standard we rejected in *State v. Towne*, 158 Vt. 607, 613-14, 615 A.2d 484, 487-88 (1992) (noting that "probable cause" can be equated with "reasonable cause"); see also *State v. Morris*, 165 Vt. 111, 129, 680 A.2d 90, 102 (1996). And certainly absolute certainty is not required for a warrant to issue.[2] See *United States v. Gaviria*, 805 F.2d 1108, 1115 (2d Cir. 1986) ("the probable cause standard 'does not deal with hard certainties, but with probabilities.' ") (quoting *Gates*, 462 U.S. at 231).

A common sense reading of the quoted portion of Trooper Campbell's affidavit, in conjunction with the officer's statements regarding his training and experience, would permit a person of reasonable caution not only to infer that the *officer subjectively believed* that what he observed in Melchior's garden was probably marijuana, but also, and more importantly, to *objectively infer* that what the officer observed *was* likely in fact to be marijuana, and, therefore, that a crime was being committed.

---

[2] It is perfectly reasonable to expect cases of mistaken identification like those noted by the dissent to occur from time to time. But this does not change the legal standard by which probable cause is measured, which as noted above is even less stringent than a more-likely-than-not standard. In other words, there may be an equal chance that the facts observed by the officer have an innocuous explanation as a nefarious one, but a warrant may still issue to resolve the question.

It would certainly have been odd behavior for the officers to return to the "scene of the crime" on foot if they believed that they were unlikely to find marijuana there. In fact, the Melchior property was one of several locations the officers visited in their eradication efforts, all of the follow-up visits being based solely on aerial identification. Furthermore, the officer's statement in his warrant application that he "ha[d] probable cause to believe" that marijuana plants would be found on the Melchior property also bolsters the implicit conclusion to be drawn from his statements regarding what he observed: that he subjectively believed that the plants he saw were marijuana.

In sum, reading the warrant application and accompanying affidavit on its face and as a whole (while excising the portions not considered by the trial court) establishes the following: the officer was taking part in an operation specifically aimed at detecting marijuana from the air; he observed plants that he determined, based on training and experience, possessed traits characteristic of marijuana; a closer examination of the location from the air revealed that the plants were situated with a cultivated plot of land; and he believed that marijuana would be found on the property if a search warrant were granted. Although not a dispositive determination, it is reasonable to infer that an officer submitting such an application believes the plants he has seen to be marijuana. Additionally, the above facts provide "reasonable cause" for a person of reasonable caution to conclude that marijuana is being cultivated on the property the officers sought to search.

Melchior would have this Court uphold determinations of probable cause only when the affidavit submitted in support of the warrant application includes *both* the details leading to the application *and* the conclusions to be drawn from those details, but to reverse determinations of probable cause when the implicit conclusions to be drawn from the specific facts remain just that, implicit. That is just the sort of hypertechnical distinction that this Court has sought to avoid when reviewing determinations of probable cause supporting warrants.[3] See, e.g., *Defranceaux,* 170 Vt. at 562, 743 A.2d at 1075-76 (viewing affidavit in common sense manner and looking at totality of the circumstances, we determined that although affidavit failed to explicitly identify the officer who identified contents of a package, identity of officer was

---

[3] Melchior relies on the Oregon case of *State v. Carter,* 848 P.2d 599 (Or. 1993), to draw such a distinction. Given our analysis, we are not persuaded by the reasoning of the Oregon court.

fairly clear); see also *United States v. Moore*, 562 F.2d 106, 109-10 (1st Cir. 1977) (although affidavit listing chemicals purchased by defendant failed to specifically indicate that in officer's experience these chemicals were used in the production of a Schedule III controlled substance, common sense reading of affidavit, which included a general description of the officer's experience and a statement that he believed that the controlled substance would be found on the premises to be searched supported implicit conclusion that the listed chemicals were "predictable precursors of" the controlled substance to be searched for). We decline to draw such a line.

*Affirmed.*

**Dooley, J.,** dissenting. For three interrelated reasons, I cannot agree that the affidavit of the trooper shows probable cause to believe that defendant was growing marijuana, such that the court could issue a warrant to search defendant's property based solely on that affidavit. The trooper's affidavit stated:

> I am a full time certified law enforcement officer having received my Basic Certification through the Vermont Criminal Justice Training Council in November 1997. I am presently employed by the Vermont State Police as a Trooper. In addition to my Basic Certification I attended the Advances [sic] Trooper School of the Vermont State Police in which I was instructed the on [sic] the topic of marijuana identification. I have also been trained in Marijuana identification and eradication through the MERT program. The MERT program provides officers with identification of marijuana from a helicopter flow [sic] by trained Vermont national Guard members.

> In addition to identification and eradication of Marijuana plants through my training and experience and in conversations with other law enforcement officers I know that:

> individuals who cultivate marijuana require implements associated with growing plants such as grow lights, fertilizer, and potting soil;

> Additionally[,] individuals cultivating marijuana commonly maintain distribution records, receipts for equipment and material purchases, address books, telephone numbers,

photographs, paraphernalia, money, negotiable instruments, books, records, and ledgers, notes, and other papers related to the ordering, sale, distribution, and cultivation of marijuana.

Individuals who are cultivating marijuana are known to secrete [sic] these items in their residences or other buildings in their control.

Based on the following facts this affiant believes that the Samuel Whiteside property contains the items to be searched for on the property to be searched because:

On 09-09-99 I was engaged in a MERT flyover in Addison County along with Patrolman D. Sweet, and National Guard Pilot J. Valley. The purpose of this flight was the detection of Marijuana plants. In the area of Vt. Rt. 116 in the town of Bristol north of the Middlebury town line I observed a stand of plants consistent in color, shape and texture with Marijuana plants. Upon closer examination from the air it was determined that the plants were situated within a vegetable garden on the property of what was later identified as the Samuel Whiteside property. (Ownership of this property was determined by contacting Penny Sherwood of the Bristol Town Offices).

After landing the helicopter I drove with Patrolman D. Sweet, and Guardsman J. Valley to the suspect property. Once there we entered a driveway of an adjacent property which afforded us a view of the back yard of the Whiteside property. From that position I observed 15-20 marijuana plants growing in a vegetable garden. This garden is located within 50 feet of the main house (white). The lawn around the garden is maintained consistent with the maintenance of the entire grounds. The lawn was mowed and the garden attended to.

We next left that driveway and drove onto Vt. Rt. 116 and parked my marked Vermont State Police car in plain view of the house. Together with Patrolman D. Sweet I went to the white house and knocked on the south door. While approaching this doorway I was able to confirm my observation of the plants, their location, and proximity to the

house. My knock went unanswered. I also verbally identified myself as a police officer and received no response.

Based upon the above information I respectfully request permission to search for and seize the aforementioned items at the place to be searched.

First, the officer never stated that he believed that he had observed marijuana. Instead, he stated that "I observed a stand of plants consistent in color, shape and texture with Marijuana plants." If the color, shape and texture of marijuana were unique, I could accept, as does the majority, that the officer was actually saying that he believed he saw marijuana. But, neither the color, shape or texture of marijuana plants, nor the combination of the three is unique. Although marijuana plants have a mature stage where they are covered in flowering buds, they also have an earlier vegetative stage when they appear just as any other green leafy plant. A marijuana plant is commonly described as a "[c]oarse, strong-smelling . . . annual," *The Encyclopedia of Herbs and Herbalism* 165 (M. Stuart ed., 1979), with male and female flowers on separate plants, three to fifteen feet tall, attached to the stem at the base or center of a long, thin, palm-shaped leaf, and having three to eleven narrow lance-shaped leaflets, that are toothed and are three to five inches long. See *id.*; accord D. Wyman, *Wyman's Gardening Encyclopedia* 184 (rev. ed., 1986) ("leaves are alternate, digitately compound with 3-7 leaflets up to 9 in[ches] long," with male and female "greenish flowers being present on different plants"). These physical characteristics describe any number of five- or nine-palmate green plants, including the houseplant false aralia (*dizygotheca elegantissima* and *dizygotheca veitchii*). We know, of course, that officers at times mistakenly identify other plants as marijuana from reported decisions. See *State v. Carter*, 848 P.2d 599, 601 n.4 (Or. 1993) (common houseplants mistaken for marijuana and search warrant obtained); *State v. Seagull*, 632 P.2d 44, 46 (Wash. 1981) (tomato plant mistaken for marijuana and warrant obtained).

The majority's response is that the officer must have believed that the plants were marijuana because he went to the property on foot. While it might be proper police practice to follow up with an on-site investigation only if an officer has identified a plant as marijuana from the air, there is nothing in this record to suggest that the police are required to follow such a procedure. Nor is such a requirement logical. I think it more likely that an officer, who saw from the air plants of the right color, shape and texture, would want to investigate further

without having to conclude that the plants were marijuana. That is exactly what occurred here. Rather than seeking a search warrant based on the sighting from the air, the officer went to look at the plants from the ground. Indeed, the State submitted an affidavit that contained the results of both the flyover identification and the observation from the driveway of the adjoining landowner, apparently believing both were necessary. Its argument that the flyover identification is alone sufficient is a fall back position.

The majority also concludes that the officer must have believed that he saw marijuana from the air because he said "he ha[d] probable cause to believe" marijuana would be found on the property. 172 Vt. at 252, 775 A.2d at 904. I would be concerned about any inference being drawn from the boilerplate of a search warrant application, but in this case even the boilerplate does not support the majority's conclusion. The assertion in the warrant application is based on the officer's affidavit *which includes his observations of the plants from the ground,* the observations that were excised by the trial court. In fact, the officer never stated that he believed he had probable cause to search the house based on the overflight observations alone, and we do not know whether he had such a belief.

I also note that the majority's construction of the affidavit is inconsistent with the language chosen by the trooper. When he believed, from his observation, that the plants were marijuana he said so, as he did when he described his observation from the driveway of the adjoining property: "I observed 15-20 marijuana plants growing in a vegetable garden." When he did not, he used the consistency language in issue.

In summary on this point, the center of my disagreement is with the majority's assertion that the officer "believed that marijuana would be found on the property if a search warrant were granted." *Id.* at 252, 775 A.2d at 905. If the officer had ever said what the majority ascribes to him, describing his observations from the air and not those from the ground, I would not dissent. In fact, the officer never stated such a belief, and we have no proper grounds from which to infer such a belief.

The second reason is that the officer was 525 to 600 feet from the plants when he observed them, approximately the distance of two football fields. He did not use binoculars or any other aid to his sight. I am not saying that this distance alone prevents a finding of probable cause. Instead, the distance provides a clear explanation why an officer would be tentative in a plant identification, describing consistency of

color, texture and shape, and not rendering an opinion on whether a plant is marijuana. Put another way, I would be much more likely to accept the majority's view that he must have thought the plants were marijuana if he had viewed them from ten feet away.

Third, the affidavit's description of the training and experience of the officer is very limited, far more limited than we find in other cases. See *People v. Oynes*, 920 P.2d 880, 883 (Colo. Ct. App. 1996) (affidavit described officer's ten years of experience, including over three hundred hours of narcotics training and a DEA course on marijuana cultivation); *State v. Cord*, 693 P.2d 81, 85 (Wash. 1985) (affidavit stated that officer had thirteen years experience, attended numerous seminars and marijuana identification school, had experience identifying marijuana in all stages of growth, and had identified marijuana from a plane on ten prior occasions that all resulted in marijuana being seized); *State v. Wilson*, 988 P.2d 463, 466-67 (Wash. Ct. App. 1999) (affidavit stated two officers were ninety percent sure plants were marijuana, one of whom was trained in marijuana identification and in three years' experience had successfully identified and eradicated over thirty separate marijuana gardens). Again, I might be more inclined to accept the majority's inference if we had clear evidence that the trooper was thoroughly trained, and had substantial experience, in marijuana identification.

I believe we should follow the one case which is clearly on point, *State v. Carter*, a unanimous en banc decision of the Oregon Supreme Court largely ignored by the majority. In *Carter*, the officer's affidavit that supported the warrant stated that he had observed green plants when he looked through a window in the defendant's home that were "consistent with" marijuana in color. 848 P.2d at 599. The officer also stated he had looked again with binoculars, and that the "color and a plant stem were 'consistent with' marijuana." *Id.* at 599-600. Like this case, the affidavit in *Carter* did not contain a statement that the green plants were marijuana nor that the officer believed them to be marijuana. In *Carter*, however, the officer's affidavit did contain details about his training and experience. *Id.* at 600 ("During the last two (2) years I made at least eleven (11) aerial observations of *what I stated was growing marijuana.* On each occasion recovery on the ground confirmed my aerial sighting."). As I pointed out above, subsequent to the issuance of the warrant, and the search of the defendant's premises, the green plants observed in the window by the officer turned out to be common houseplants, and the only marijuana seized was from a windowless basement area. *Id.* at 601 n.4.

In reversing, the *Carter* court held that the affidavit was not sufficient to establish probable cause for the issuance of the warrant, *id.* at 603, and the standard of review in *Carter* is the same as that used here by the majority. Compare *Carter*, 848 P.2d at 602 (whether the magistrate could have reasonably concluded from the facts included in the affidavit that there was probable cause to believe the green plant was marijuana), with 172 Vt. at 250, 775 A.2d at 903 ("whether a magistrate *objectively* may infer from the facts in the affidavit that 'a crime has been committed and that evidence of the crime will be found in the place to be searched,'" quoting *State v. Zele*, 168 Vt. 154, 157, 716 A.2d 833, 835-36 (1998)). The *Carter* court reasoned:

> Omissions are of significance when evaluating an affidavit for a warrant. Here the affidavit omitted any conclusion drawn as to the nature of the green plant observed or whether affiant, as a person trained and experienced in identifying marijuana visually, drew any conclusion. The affidavit included no information as to why commonplace observation of a green plant in a residence window would support a finding, or probable cause to believe that the plant the observer saw was marijuana. It is not a particular fact causing one to believe that the seizable thing is there. Those comments are not a criticism of what the officer put in his affidavit. Rather, simply stated, what the affidavit included was not enough, because it did not state that the plant observed was, or was believed to be, marijuana.

*Carter*, 848 P.2d at 602 (citations omitted).

Of course, we are not required to follow a decision of the Oregon Supreme Court. *Carter* is, however, the only decision directly on point, is unanimous, and well reasoned. Unfortunately, the majority does not tell us why it finds *Carter* unpersuasive.

Reduced to its essence, the holding of the majority is that every time a police officer flies over a large green plant, with narrow leaves that shine in the sunlight, and sees it from the air, he can obtain a warrant to search the home of the landowner where the plant is found. There will be no reason for the police to attempt to obtain a positive identification on the ground. The result, I fear, will be unnecessary and mistaken home searches, with a clear invasion of the privacy of Vermont homeowners.

I respectfully dissent. I am authorized to state that Justice Johnson joins in this dissent.